### CHITTENDEN COUNTY, JANUARY TERM, 1828.

### John C. Thompson vs. Amos Boardman and Henry Boardman.

A guardian of a spendthrift has, by virtue of his office authority to sell standing trees from the land of his ward, and may receive the money in satisfaction for the timber, or take notes for the price agreed on.

If such guardian take notes payable to himself, for the property thus sold, the ward cannot discharge them, even after he is released from his wardship; more especially, if there be a balance due from him to the guardian for advances, &c.

If, however, none of the timber, for which such notes were given, had been received by the purchaser before the guardianship be discharged, and the ward refuse to permit it to be taken on the contract, it might be a good defence to an action on the notes.

THIS was an action of *Assumpsit* on promisory note for $270, dated January 19, 1825. At the trial in the County Court, at November adjourned term, 1826, it appeared that the plaintiff, at the time the note was executed, was guardian to one *Daniel Hurlburt*, under the 47th *Chap.* 4th sec. *N. Comp. Laws*, and and that by virtue of his authority as guardian, he had sold to the said *Amos Boardman*, a quantity of pine trees from the said *Hurlburt's* land, and had taken notes therefor, payable to himself, of which the note in question was one. The defence relied on was *want of consideration*, and also a discharge of the note by *Hurlburt*, after he was released from his wardship.

At the trial in the County Court, the plaintiff, to maintain the issue on his part, offered in evidence the following written instru-

ment, which was objected to by the defendant, but was admitted by the court: "Know all men by these presents, that I, *J. C.* "*Thompson*, guardian of *Capt. D. Hurlburt*, for and in behalf of "said *Hurlburt*, have bargained, sold, and conveyed, and do here- "by bargain, sell, and convey, unto *Amos Boardman*, a sufficient "quantity of white pine trees, now being on lot No. 112, in *Es-* "*sex*, (said land being owned in fee by said *Hurlburt*,) to make "60000 feet of square timber, cubic measure, to be cut and "drawn from said land, previous to the first day of April next: "the said *Boardman* being under obligation to manage in select- "ing, cutting, and drawing the timber upon said land, so as not "unnessarily to injure, waste, or destroy the timber upon said "land, and to use and account for, according to the terms of this "contract, every part of the trees he may cut down, that may be "found fit for good and saleable square timber. It is hereby un- "derstood that the said *Boardman* is not intentionally to cut any "more than 60000 feet, as aforesaid. But if he may, without "knowing the precise quantity, happen to cut more, the excess is "to be paid for, at the rate of $9 per thousand feet. And I, the "said guardian do hereby acknowledge to have received the full "consideration of this contract, by note of this date, signed by said "*Amos*, and *Henry Boardman*. It is understood that the said "quantity is to include the timber already cut by said *Amos* "*Boardman*, on said lot, and that no more is to be cut than will "be sufficient to make up said 60000 feet, including what is al- "ready cut. Said timber to be hereafter cut to be measured "by said *Amos*, and *Heman R. Hurlburt*. And I hereby dis- "charge said *Amos* from all accountability on the contract made "heretofore with the said *Daniel Hurlburt*, relating to cutting tim- "ber on said lot. In testimony whereof, the said *Hurlburt* has "hereunto subscribed this contract, by his said guardian, this 19th "day of January, 1825.                DANIEL HURLBURT,

"By his Guardian, J. C. THOMPSON."

It was admitted, that on the 12th day of March, 1825, the said *Daniel*, was released from his said wardship.

*Ch. Adams, Esq.* witness for the defendant, testified, that *Hen-* *ry Boardman*, paid to him, as attorney of *Nathaniel Mayo*, April

28, 1825, $490,31, by direction of <span>Chittenden, Jan. 1828.</span>
said *Hurlburt*, & gave *Hurlburt* a note <span>*Thompson vs. Boardman et al.*</span>
for the balance, being $49,69, upon which *Hurlburt* discharged
the said notes, and executed the following instruments, which
were objected to by the plaintiff, but were admitted by the court :
" Whereas, a contract was made between *Amos Boardman* and
" *Daniel Hurlburt*, on the 9th day of November, 1824, for cutting
" timber on lot No. 112, in *Essex*; and whereas the said *Amos*,
" and *Henry Boardman* have cut a quantity of timber on the
" said lot during the past winter, and have this day paid me the
" full consideration for 60000 feet of timber, but have not taken
" that quantity from said lot. Now, therefore, in consideration of
" said payment, I hereby agree that said *Amos* and *Henry* shall
" have liberty to cut and carry away from said lot No. 112, a
" sufficient quantity of timber to make up, with what they have
" cut, the said quantity of 60000 feet at any time within one
" year from this date.   DANIEL HURLBURT.
   " *Burlington, April* 27, 1825."
   " Know all men by these presents, that I, *Daniel Hurlburt*, am
" holden, and firmly bound unto *Amos Boardman* and *Henry*
" *Boardman*, in the sum of $2000, for payment, &c. dated April
" 27, 1825.   The condition of this obligation is such, that where-
" as, one *J. C. Thompson*, pretending to be guardian to the said
" *Hurlburt*, and under authority of such pretended gurdianship,
" did, on the 19th day of January, 1825, contract with the
" said *Amos* and *Henry* to sell them a large quantity of pine tim-
" ber, standing and growing on the land of said *Hurlburt*, in pay-
" ment of which timber the said *Amos* and *Henry*, on the same
" day, executed two promissory notes for $270 each, one paya-
" ble by 1st of May, then next, the other by 1st June, then next.
" And whereas the said *Hurlburt* denies the authority of the said
" *Thompson* to sell or dispose of any part of his timber, or to re-
" ceive payment therefor, and has forbidden the said, *Boardman*
" to fulfil or carry into effect the said contract, or to pay the said
" notes, as a contract or payment binding on the said *Hurlburt*; and
" the said *Hurlburt* having agreed to indemnify and save harmless
" the said *Boardman*, against any and all suits brought by the said
" *Thompson* against said *Boardman*, and against all damage and
YY

" expense in the premises.   Now,
" if the said *Hurlburt*, shall well
" and truly keep his agreement with the said *Boardman*, and in
" all things indemnify and save him harmless, as aforesaid, in the
" premises, then this bond to be void ; otherwise, not.

" DANIEL HURLBURT."

The plaintiff offered in evidence the following deposition; which was excluded by the court.

" I, *Erastus D. Hubbell*, jun. say that some time, I think, in May,
" 1825, *H. Boardman* came into *J. C. Thompson's* office.   *Thomp-*
" *son* enquired of him if he intended soon to pay the Hurlburt
" notes, as they called them.   In answer to which *Boardman* infor-
" med him that he was about to pay them over to *Hurlburt*; at
" which *Thompson* appeared surprised, and told *Boardman* that
" the notes were his property, and that he must not pay them to
" *Hurlburt*, that if he did, it must be at the risk of having to pay
" them again; to which *Boardman* said he meant to go safe; that
" before he paid the money to *Hurlburt* he meant to be secure,
" and requested the dates and amount of the notes with a view to
" take security; and the notes were shown him by *Thompson*,
" who told him that he might want security, for he would have to
" pay the money to him; that the notes were his; that he had
" given *Hurlburt* credit for them on book, and that *Hurlburt* yet
" owed him; which credit of notes to *Hurlburt* on book, I had
" then previously seen.                          E. D. HUBBELL."

The plaintiff offered to prove that at the time of the payment of said notes to *Hurlburt*, said *Hurlburt* was indebted to him for advances made, and expenses incurred, as guardian in a sum larger than the amount of said notes; which was objected to by the defendants, and rejected by the court.   A verdict, by the direction of the court, was returned for the defendants; and the cause now came before this court on a bill of exceptions filed " by the plaintiff to the said decisions of the County Court.

The case was argued by *Thompson* and *Allen*, for the plaintiff, and by *Adams* and *Bailey* for the defendants.

PRENTISS J. delivered the opinion of the court.   The statute, prescribing the powers and duties of a guardian of a spendthrift, authorizes and empowers the guardian to take into his possession

all the lands, goods, chattels, rights
and credits of the ward, and the
same to dispose of, and manage to the best advantage of the
ward, and his heirs; provided, that he shall not sell and con-
vey the lands of the ward, without the order and permission of
the Supreme Court. And if any person shall detain or withhold
the lands, goods, chattels, rights, or credits of the ward, the guar-
dian may demand and recover the same by due course of law;
and out of the estate, he is to pay the just debts of the ward, who
is rendered incompetent to make any bargain or contract what-
ever. *Comp. stat. p.* 374, *sec.* 14, 15.

Chittenden, Jan. 1288.

*Thompson* vs. *Boardman et al.*

By the statute, the guardian of a spendthrift is entitled to the
possession, both of the personal and real estate of the ward, for
the support of the ward and the payment of his debts; and by the
general nature of his trust, he is vested with an authority, certain-
ly not less extensive, than that of a guardian of an infant at common
law. In the latter case, the guardian is held to have such an in-
terest in the ward's estate, as enables him to lease it, to avow for
*damage feasant*, and to bring trespass or ejectment in his own
name. (*Shopland* vs. *Royle, Cro. Jac.* 98.—*Wade* vs. *Baker,
Ld. Raym.* 130.—*Eyre* vs. *Countess of Shaftsbury,* 2 *P. Wms.*
103.—*Byrne* vs. *Van Hoesen,* 5 *Johns. Rep.* 67.)—In *The
King* vs. *The Inhabitants of Oakley,* 10 *East,* 491, *Lord Ellen-
borough* said, that a guardian in socage had not a mere office or
authority, but an interest in the ward's estate, and was entitled to
the possession of the property. And in *The People* vs. *Byron,* 3
*Johns. Cas.* 53, it was held that the guardianship of an infant un-
der an appointment from chancery, created not merely a naked
power, but a power coupled with an interest; that although the
guardian had no beneficial interest in the property, yet he
had the dominion of it, *pro tempore,* and possessed the same au-
thority over it, as an administrator has over the estate committed to
his charge. As the statute gives the guardian of a spendthrift the
possession and disposition of the ward's estate, and enables him to
demand and recover the same by due course of law, it would seem
quite clear, that he has not a bare office merely, but is vested with
an authority coupled with an interest. . The nature of the guar-
dian's authority over the estate committed to his charge must,

Chittenden, Jan. 1828.

Thompson vs. Boardman et al.

we think, involve the right, to some extent at least, to cut timber standing and growing upon the land of the ward. Although timber so situate is to be regarded as part of the real estate, yet the right, in the case of guardians and trustees, appears to be well established. (*Case of the Marquis of Anandale*, 2 *Ves.* 381.—*Inwood* vs. *Twine*, *Amb.* 417.) By the *statute* 17 *Ed. II.*, the lands and tenenments of lunatics are to be kept without waste, and in no wise to be *aliened*. Although, under this statute, timber on the land is considered as part of the real estate, yet in *ex parte Ludlow*, 2 *Atk.* 417, *Lord Hardwick* was of opinion, that committees of lunatics might exercise the same power, as to cutting it for repairing the estate, as any other discreet person who was owner ; and in *Oxenden* vs. *Lord Compton*, 2 *Ves.* 69, the *Lord Chancellor* observed, that there were cases in which to cut timber upon the estate of a lunatic would be no waste ; as if it were wanted for his sustenance, or it had been sold to be used for his support. Indeed, it seems to be settled, that timber may be cut, where the maintainance of the lunatic, the payment of debts, or the interest of the lunatic requires it.—*Ex parte Bromfield*, 1 *Ves. Jun.* 453. If the guardian of a spendthrift has authority to cut timber, not only for necessary repairs, or to clear the land for cultivation, but also for the support of the ward or the payment of his debts, without being guilty of waste, as appears to be the doctrine of analagous cases, it would seem difficult to draw into question the power of the guardian in this respect, or to limit or restrict the exercise of it, otherwise than on an application to a Court of Chancery. But it is to be observed, that the timber which was licensed to be cut in the present case, was contracted and sold to *Amos Boardman*, the principal defendant, by *Hurlburt* himself previous to his being put under guardianship. In place of that contract, a new contract by the plaintiff, after his appointmtment as guardian, was substituted, taking the note in question, and one other note, for the price of the timber, and discharging *Boardman* from his liability on the old contract. The transaction on the part of the plaintiff, therefore, was, in fact, a mere renewal by him, in his capacity of guardian, of the contract previously made by *Hurlburt*. But whether the transaction is considered in this light, or as an original sale

of the timber by the plaintiff, there {   Chittenden, Jan. 1828.
does not appear to be any excess }   *Thompson vs. Boardman et al.*
of authority on his part; and he was undoubtedly competent,
either to receive the money in satisfaction for the timber, or to
take notes for the agreed price.    He took the defendants'
notes for the price of the timber, as he was legally authorized to do,
and there can be no question but that there was a sufficient consid-
eration for the notes.

It cannot be pretended, that the discharge of the guardianship
annulled, vacated, or in any way invalidated any of the acts perform-
ed by the plaintiff, within the scope of his powers, while guardian ;
and the notes being founded on a sufficient consideration, and
binding in their creation, the subsequent discharge of the guar-
dianship cannot affect their validity.  When a guardian makes a
contract, as such, he binds himself, and not the ward, and an ac-
tion upon the contract must be brought against the guardian.—
It is held that the guardian of an insane person cannot make his
ward liable to an action, as on his own contract, by any promise
which the guardian can make ; and if he gives a note for the
debt of his ward, describing himself as guardian, he will be per-
sonally liable, although the guardianship be discharged.—*Thatch-
er* vs. *Dinsmore*, 5 *Mass.* 299.  The plaintiff, as we have al-
ready seen, had not a bare office or agency merely, but an author-
ity coupled with an interest; and the contract with respect to
the timber was, in law, as well as in fact, a contract between the
plaintiff and *Boardman,* and not between *Hurlburt* and *Board-
man.*  If the beneficial interest in the contract was in *Hurlburt,*
yet the legal interest was in the plaintiff, and the notes were ex-
ecuted to him, and vested a legal right of action in him.  If *Hurl-
burt,* then, after the discharge of the guardianship, could be per-
mitted to receive payment and discharge the notes, it could only
be upon the ground that the notes were taken by the plaintiff in
trust for him, and he was equitably entitled to the money due upon
them.   But he could have no equitable right to the money, if
there was a balance due to the plaintiff for advances.   This, it ap-
pears, the plaintiff offered to shew ; and the testimony, if it had
been admitted, would have been a full answer to all right claimed

by *Hurlburt*, in equity, to receive the money upon the notes, and clearly shown that the payment of it to him, by the defendants, could not be justified on that ground.

" Indeed, if it were to be considered that the plaintiff was vested with a bare office merely, giving him a naked authority only, it would be certainly just, on the facts offered to be proved by him, to allow him to enforce payment of the notes. He offered to prove, that he had made advances to a greater amount than the notes, and had passed the notes in account to *Hurlburt*, of which the defendants had notice before they made payment to *Hurlburt*. On these facts, we think that the plaintiff, in any view of the case, would have a right to the money due upon the notes, and that the payment to *Hurlburt*, after the notice given, could not avail the defendants. It is not necessary, nor do we intend to say, that a guardian, after the termination of the guardianship, has a lien for his disbursements upon the unappropriated goods of the ward. In *Norton* vs. *Strong*, 1 *Con. Rep.* 65, it was determined contrary, however, to the opinions of *Reeve, Ch. J.* and *Baldwin J.* that on the termination of the guardianship by the death of the ward, the whole of his personal estate vested in his executor, and the guardian had no lien upon it for disbursements made in the lifetime of the ward. Admitting this decision to be right, it does not touch the question, whether a guardian, who has taken security to himself for goods sold, or a debt due the ward, having a balance due him, and giving notice of the same, has not a right to the money, notwithstanding his office has ceased, which cannot be defeated by payment to the ward or his representative. It is the duty of the guardian not only to provide for the support of the ward and his family, but out of his estate to pay his just debts ; and if the guardian has made advances for these purposes, as it may be often necessary for him to do, to prevent a sacrifice of the ward's estate, it would not be consistent with justice, that in the event of his being discharged, or his guardianship ceasing by the death of the ward, the ward in the one case, or his representative in the other, should be entitled to receive payment upon all securities taken by the guardian, and which he has appropriated to himself as a fund, and the only one perhaps he has out of which to reimburse his advances.

It does not distinctly appear from ⎰ Chittenden, Jan. 1828.
the statement of the evidence of- ⎱ *Thompson* vs. *Boardman et al.*
fered by the plaintiff, whether the advances were made by him,
before or after the notes in question were taken. If the advan-
ces were made after, and on the credit of the notes, the case would
be still stronger for the plaintiff. Although the mere passing the
notes in account to *Hurlburt* would not be equivalent to a payment
over to him, or bind him to account for the amount at all events,
yet, if the plaintiff was led to make advances in consequence of
the notes, he ought to be allowed to enforce payment of them,
notwithstanding the guardianship is discharged. But in the view
we have taken of the subject, it is immaterial whether the advan-
ces were made before or after the notes were taken. In either
case, the plaintiff, on the facts offered to be proved by him, would
be entitled to recover the money due upon them.

If none of the timber, for which the notes were given, had been
received before the guardianship was discharged, and *Hurlburt*
had refused to permit it to be taken on the contract, it might be a
good defence to the action, on the ground that the consideration
of the notes had failed. But it appears that the principal part of
the timber was taken before the guardianship was discharged, and
the part not taken could only be a defence *pro tanto.*

Judgment reversed, and cause remanded to the County Court
for a new trial.

*Thompson* and *Allen*, for plaintiff.
*Adams* and *Bailey*, for defendant.