HARDY, *Guardian,* v. CITIZENS' NATIONAL BANK OF KEENE.

A guardian has no authority to bind his ward, either by note or by a pledge of the property of the ward.

One taking in pledge, from a guardian, a note payable to the order of the guardian, is not an innocent holder.

A bill in equity may be maintained by a guardian against the holder of notes belonging to his ward, pledged to the former by a former guardian.

BILL IN EQUITY, by the plaintiff, as guardian of Bisco, an infant, alleging that the defendants hold certain notes, the property of his ward, and praying that they be required to deliver them to him.

The defendants claim to hold the notes as collateral security for loans made by them to one Bolster, the former guardian of the infant, in the ordinary course of business, and in good faith. Facts agreed. Bolster was guardian of Bisco, the minor, and the notes referred to in the bill and answer were held by him as guardian, and made payable to him or order as guardian. The loans were made in good faith by the defendants, in their ordinary course of business as bankers, upon the notes of Bolster executed by him as guardian, one for $500 and the other for $1,000, on the credit of the notes in controversy as collateral, which he at the same time endorsed as guardian and delivered to the defendants. At the time the loans were

effected, Bolster told the defendants that he wanted the money for the use of his ward. The notes in controversy were given for money due to the infant. No part of the loans for which they are held by the defendants as collateral has been paid. The defendants knew that the notes taken by them as collateral were good, and endorsed by responsible parties, and that no part of the money received of them was used for the benefit of the ward, or has been paid to the plaintiff.

The plaintiff was surety for Bolster as guardian, and upon his resignation was appointed Bolster's successor. He demanded the notes pledged of the defendants, and they refused to deliver them to him. Bolster settled his account in the probate court as guardian when he resigned, and a balance of $1,889 was found in his hands, none of which has been paid to the plaintiff.

*Batchelder & Faulkner*, for the plaintiff. The only question is, Had Bolster a legal right to encumber his ward's property as he attempted to? By *c.* 184, *s.* 3, Gen. Laws, the guardian shall take care of the person and estate of his ward, improve his estate frugally and without waste, &c.; and by *c.* 185, *s.* 3, he shall have the care and management of his estate. But nowhere, by statute or common law, is he authorized to encumber his ward's estate with debt, or in any way pledge it to pay private debts; nor has he any authority to borrow money as guardian; and the notes he, as guardian, gave the defendants for the loans being unauthorized, he simply bound himself, and the notes are mere private obligations, and his ward's property could not be pledged to secure them. As well might he mortgage his ward's real estate to secure them, or the ward's horse or cow.

Bolster's representations that he wanted the money for his ward's use, are no protection to the defendants in this case; if they were, immense frauds might be covered in that way. Besides, the defendants knew there was no occasion to loan him money for that purpose, from the fact that Bolster could have drawn on the payor of the collateral, and the large amount of the loan.

A guardian is a trustee, and subject to all the laws and decisions governing trusts of private property, and his authority is more limited than that of an ordinary trustee: he has no interest coupled with his power, and he holds the most sacred of all trusts, and is subject to the most stringent rules. *Moore* v. *Hazelton*, 9 Allen 104; *Hicks* v. *Chapman*, 10 Allen 463; *Simmons* v. *Almy*, 100 Mass. 239.

A trustee has no authority to pledge trust property to pay private debts; and when the fact of the trust is disclosed, the party receiving, as in this case, takes it at his own risk.

The statute, *c.* 185, *s.* 11, requires the guardian to invest his ward's money in the name of his ward, or in his own name as guardian. This is a salutary provision, and is designed to protect against

such operations as this case discloses. The plaintiff's rights in the case are the same as they would be had these notes been payable to Helen M. Bisco or order, &c., and she, if of lawful age, could pursue them wherever found. A guardian has a more limited authority than an administrator over property. The following authorities sustain the plaintiff's position : *Ham* v. *Ham*, 58 N. H. 70 ; *Shaw* v. *Spencer*, 100 Mass. 382; *Tenney* v. *Evans*, 14 N. H. 343; *Sparhawk* v. *Allen*, 21 N. H. 9; *Hill* v. *McIntire*, 39 N. H. 410 ; *Ladd* v. *Harvey*, 27 N. H. 372 ; *Exum* v. *Bowden*, 4 Ired. Eq. 281; *Jaudon* v. *National City Bank*, 8 Blatchf. 430 ; *Duncan* v. *Jaudon*, 15 Wall. 165 ; *Sprague* v. *Cocheco Manf. Co.*, 10 Blatchf. 173.

*Lane & Dole*, for the defendants. I. The important point made by the plaintiff in his bill of complaint is, that a banking institution which loans money to the guardian of a minor as such, and in good faith, and in the ordinary course of its business, and takes at the same time from the guardian, as collateral security for the loan, a promissory note payable to the order of such guardian, duly indorsed and delivered, cannot hold it as against a subsequent guardian of the same ward. This view, we think, will not stand the test of reason or authority. The evident purpose of the law in providing guardians for minors is to supply for their benefit that judgment and experience which are required to secure to them a proper education, and protection of their property. Such, in fact, is substantially the duty imposed upon guardians by the statute. And to this end they are required to give bonds with sufficient sureties for the faithful performance of their duties. The guardian has the "care and management" of the ward's property, and is bound to account for it to the probate court. He has the "custody and tuition of his ward" by authority of the statute (Gen. St., c. 185, s. 3), and must use with a sound discretion the means in his hands required for the proper care and education of his ward. The guardian is, in fact, trustee of his ward, having charge of his person and estate, and must use a proper amount of his trust property in supplying his physical necessities, and in his mental and moral training. And for this purpose we submit that he may use the ward's money, if any he has on hand ; he may collect notes, bonds, or any other claims, or, as involving only the same principle, he may borrow money, and pledge such notes or bonds as security for its payment, or he may sell personal property which he may have on hand.

In *Hill* v. *McIntire*, *supra*, 414, Judge *Bellows*, in delivering the opinion of the court, said that "executors, administrators, and guardians of minors, and others, are regarded in equity as trustees, and the funds which come into their hands as trust funds." The idea is, that the rules and principles of law applicable to trustees, *eo nomine*, are applicable to this class of trustees. This view, so far as we have discovered, is treated as well established law. In

the American note to the case of *Elliot* v. *Merriam*, in 1 L. C. Eq. 124, relating to " sales of personal property by executors, guardians, or other trustees," the principle contained in the opinion of Chancellor *Kent* in the case of *Field* v. *Schieffelin*, 7 Johns. Ch. 150, is considered the established rule in England and America. In that case, *Kent*, in referring to the English cases, says, " They all agree in this, that the purchaser is safe if he is no party to any fraud in the executor, and has no knowledge or proof that the executor intended to misapply the proceeds, or was in fact by the very transaction applying them to the extinguishment of his own debt." The better doctrine is stated to be, that " if the purchaser knew that the executor was applying the assets to his own private use, he buys at his peril, but if he has no such proof or knowledge, he is not bound to inquire into the state of the trust, because he has no means to support the inquiry, and he may safely rely on the general presumption that the executor is in the due exercise of his trust." *Ellis* v. *Essex Bridge*, 2 Pick. 243 ; 2 Kent 228 ; 1 Par. Cont. 114. A pledge for a contemporaneous advance is good if free from fraud. 1 Per. Tr., s. 225 ; *Tyrrell* v. *Morris*, 1 Dev. & Bat. Eq. 559 ; *Williamson* v. *Morton*, 2 Md. Ch. 94, 100 ; *Miles* v. *Durnford*, 13 Eng. L. & Eq. 123, 124. This view is fully sustained in *Hill* v. *McIntire*, *supra*, 416. And this is the rule applicable to agents and all parties entrusted with the possession of property which is disposed of in fraud of the *cestui que trust*. *Garrard* v. *Railroad*, 29 Penn. St. 154 ; *Railroad* v. *Barker*, *id*. 160. But the purchaser's title will not be affected unless the fraudulent purpose of the trustee is brought to the knowledge of the purchaser, so as to make him a party to it, or there is a want of consideration. *Hill* v. *McIntire*, *supra*, and cases cited. This principle holds good with copartners, in fraudulently and collusively disposing of partnership property, and to their own private use. Fraud vitiates a purchaser's title as to partnership creditors, and also as to the copartner's rights. *Elliot* v. *Merriam*, *supra*, 125.

The fact that the word " guardian " was affixed to Bolster's name in these notes may be evidence that they were held by him in that capacity, so that no one could have properly received them in payment of the guardian's private debt, or knowingly taken them for his private use ; but it is no evidence of any purpose or intent of the guardian to misapply the funds obtained on such securities. *Field* v. *Schieffelin*, 7 Johns. Ch. 150 ; *Petrie* v. *Clark*, 11 Serg. & Raw. 377, 385 ; *Ashton* v. *Atlantic Bank*, 3 Allen 217 ; 1 Per. Tr., s. 225.

II. But Bolster, as guardian, borrowed the money, as he said, for the use of his ward, pledged the securities for its payment, and afterwards, it appears, misapplied it. Whether he meditated a fraudulent use of the money at the time he borrowed it probably makes no difference in this case, for in either event he himself would, as guardian, be bound by the act. Whether he did it with

a good or a bad intent, he could not repudiate the transaction. And if he could not, no subsequent guardian appointed in his place could do it for his benefit, directly or indirectly, nor for his bondsmen, because there is no privity between them; and he has no express or implied duties of that kind to the bondsmen of a former guardian, and they have no legal claims on him to pursue such a course at the expense of the ward's estate; nor could he do it for any party in privity of law or estate with the former guardian, nor by any person who has not suffered pecuniarily and innocently for the cause for which the suit is brought. The present guardian has not suffered or been wronged as such, for any matters set forth in his complaint. His ward has not, so far as appears, been the loser by the former guardian's misconduct, nor is she likely to be if the present guardian performs the duties of his present trust, and compels the bondsmen to make good the deficit if the principal is unable to do it, and lets the bondsmen seek their own redress at their own expense and not at the expense of the ward. Bondsmen are required for the purpose of protecting the entirety of the ward's estate; and the bondsmen assume that responsibility on their confidence in or security from the guardian, and not from any security from the ward or his estate. And they have no direct claim on the ward's estate to aid in securing redress for the breach of trust of the guardian. Each bondsman must bear this expense for himself.

If the ward has been damnified in her estate through the irresponsibility of her guardian and his bondsmen, and through the fraudulent collusion of the defendants to that end, perhaps she might maintain a suit by a next friend against the defendants for wrong-doing. Or if any bondsman of the guardian had been compelled to make good any deficiency resulting from the fraud of the defendants in taking the ward's property, perhaps he might pursue the property, or its proceeds, for his indemnity. But here is no loss to the ward—no damage, as yet, to the bondsmen—which would enable either of them to maintain a suit in equity, much less a suit in the present form; and no taint of fraud, real or constructive, on the part of the defendants, to render them responsible to any one for Bolster's misuse of the ward's property. Here the authorities seem to be uniform, and perfectly consistent with reason and the rules and principles which govern the numerous classes of trusts, of which this is one, as administered by courts of equity.

STANLEY, J. It is the duty of the guardian, enforced by the statute, to take care of the person and estate of his ward, and improve his estate frugally and without waste; and he is entitled to the care and management of this estate of his ward. G. L., *c.* 184, *s.* 3; *c.* 185, *s.* 3. The power to borrow money is not conferred upon the guardian by statute, and if he has it, it results from his

relation to the ward.   It is conceded that the guardian is in fact a trustee, and that the law applicable to the relation of trustee and *cestui que trust* applies to guardian and ward.   Neither a trustee nor a guardian can bind their *cestui que trusts* by bills or notes, and if they sign as such they are personally bound.   They occupy the same relation to the obligation created by their act of signing, that an agent does who assumes without authority to bind his principal: they bind themselves.   In *Thacher* v. *Dinsmore*, 5 Mass. 299, it is held that a guardian signing a note as guardian cannot bind the estate of the ward.   This doctrine was approved in *Forster* v. *Fuller*, 6 Mass. 58,—the court there saying that although the note states that he promises as guardian, yet he is personally bound. To the same effect are *Tenney* v. *Evans*, 14 N. H. 343; *Jones* v. *Brewer*, 1 Pick. 314; *Barnaby* v. *Barnaby*, 1 Pick. 221; *Bicknell* v. *Bicknell*, 111 Mass. 266; *Thompson* v. *Boardman*, 1 Vt. 367; Dan. Neg. Ins., *s.* 271; Sch. Dom. Rel. 464; 1 Par. Cont. 136.   In *Phelps* v. *Worcester*, 11 N. H. 51, 53, the court say,—" The rule that the guardian, when he undertakes to act for the ward in contracts with others, should alone be liable, is sustained by the soundest reason.   A different rule would subject the ward to numerous suits, the merits of which might be wholly unknown to him.   In all expenditures arising under such contracts, the ward should be liable only to his guardian.   He is then answerable to but one individual, and then only on a decree of court, on settlement of his guardianship account."

The guardian could not bind the ward or the trust property by the pledge.   He is limited to the purposes of the trust.   He has only a naked authority not coupled with an interest.   *Ham* v. *Ham*, 58 N. H. 70; *Wait* v. *Holt.* 58 N. H. 467; *Granby* v. *Amherst*, 7 Mass. 1; *Manson* v. *Felton*, 13 Pick. 206, 211; *Simmons* v. *Almy*, 100 Mass. 239; *Wallis* v. *Bardwell*, 126 Mass. 366.

If, then, the guardian cannot bind the estate of his ward by note, he cannot bind it by a pledge of the trust property as security for money hired by him.   If money is needed by the guardian, the statute points out the way in which he can obtain it, and the existence of this statute is an argument against the power claimed for the guardian at common law.   G. L., *c.* 184, *s.* 10; *c.* 185, *s.* 10; *c.* 192, *s.* 2.

But the defendants claim that they took the notes in question for a valuable consideration; that the loans were made by them in good faith, in the ordinary course of their business as bankers, and they are therefore entitled to hold them.   This is not enough.   In order to give them the right to hold them, they must have taken them without knowledge of the fact that they were trust property. This they did not do.   The notes were long over-due, and were payable to Bolster as guardian.   This was notice to the defendants that they were trust property, not belonging to Bolster; and, having taken them with this notice, they are charged with knowl-

edge that he had no right to pledge them. *Lyford* v. *Thurston*, 16 N. H. 399 ; *Ladd* v. *Harvey*, 27 N. H. 380 ; *Hill* v. *McIntire*, 39 N. H. 410 ; *Shaw* v. *Spencer*, 100 Mass. 382 ; *Loring* v. *Salisbury Mills*, 125 Mass. 138; *Kinloch* v. *I'On*, 1 Hill Ch. 190 ; *Maples* v. *Medlin*, 1 Mur. 219 ; *Duncan* v. *Jaudon*, 15 Wall. 165 ; Sto. Eq. Jur., *s.* 1257, *et seq.* Especially is this true where the statute directs how personal property shall be sold. Per. Tr., *s.* 225.

The defendants hold the notes as Bolster would, in trust for the rightful owner, who in this case is represented by the plaintiff. Bolster, if he held them, could not refuse to deliver them up, and the defendants do not stand any better. It matters not that the name of the ward was not inserted in the notes. The fact that they were payable to Bolster as guardian was sufficient to put the defendants upon inquiry. Nor is it material that the present guardian was surety for Bolster, his predecessor. The notes which the defendants hold belong to the ward, and it is the plaintiff's duty, as guardian, to recover them. He stands in the place of the ward, and acts for her. If she were of age she could recover them, regardless of the pledge and of the fact that the bond was sufficient to protect her. *McDuffie* v. *McIntyre*, 11 S. C. 551.

In *Ellis* v. *Essex Bridge*, 2 Pick. 243, the property was sold, not pledged, and the statute authorized a sale without license.

As no benefit was derived by the ward or her estate from the contract of her guardian with the defendants, it is not necessary to inquire whether such benefit would have entitled the defendants to any relief.

*Decree for the plaintiff.*

ALLEN, J., did not sit: the others concurred.