## WALKER *against* SWARTWOUT.

A public agent, in his known official capacity, employing a man to work on account of government, is not personally liable for his wages.

THIS was an action of *assumpsit*, for work and labour, tried before Mr. Justice *Spencer*, at the *Jefferson* circuit, in *June* last.

The defendant was quarter-master general of the army of the United States, which arrived at *French Mills*, in the county of *Franklin*, about the 20th of *November*, 1813. The defendant directed certain boatmen, who were with the army, and the plaintiff among the rest, to go to work, for the use of the army, and that they should be each allowed two dollars per day, and one ration; that the plaintiff accordingly worked in making tents, &c. for the hospital department; and laying up the boats and rigging. After working about six weeks, the defendant being about leaving *French Mills*, the plaintiff applied to him for a certificate, as evidence of the contract, and of the time he had worked; and the defendant replied, " my word is sufficient;" and told the plaintiff to go to work, and he would pay him when his work was done. The plaintiff continued to work until the 20th of *February*, 1814, when he was discharged without having received any pay. The plaintiff not knowing where to find the defendant, who had left the place, applied to the deputy quarter-master general, at *Sackett's Harbour*, and informed him what he had done, who paid the plaintiff 20 dollars.

. The plaintiff, while at his work, drew his rations, daily, with the other boatmen and soldiers, and the defendant had paid them their wages up to the 20th of *November*, 1814.

*Brown*, the deputy quarter-master general, testified that the plaintiff applied to him, at *Sackett's Harbour*, and informed him that he had worked for the defendant, but produced no certificate; and having been previously acquainted with the plaintiff, paid him the 20 dollars, and took his receipt as deputy quarter-master general; that he first employed the plaintiff, and others, in the autumn of 1813, to go down the *St. Lawrence* with the army, and gave them their certificates of contract, *on account of the public.* This contract with the plaintiff expired about the time the army arrived at the *French Mills.*

A verdict was found for the plaintiff, for the sum of 136 dollars, subject to the opinion of the court, on a case containing the above facts.

*Benedict*, for the plaintiff. The question is, whether the defendant, on this contract, is personally liable. There may be some apparent contradiction among the authorities, on this subject. The general rule, however, to be deduced from them, clearly is, that a public agent, contracting as such, is not personally liable. But whether he contracted as such agent, or not, is matter of fact for a jury to decide; the intention of the parties at the time, is to govern. The plaintiff was to work by the day. It could not be the intention of the defendant, that the plaintiff, after working a day, should apply to the government for his two dollars. But here is, in fact, an express promise by the defendant himself, that he would pay the plaintiff.

In *Sheffield* v. *Watson*,* *Livingston*, J., says, It is not enough, the plaintiff knew the defendant to be a navy agent, and that the frigate, whose model he was making, was to be a public ship of war. Before we send him to government for redress, it should appear, as well that *Watson* contracted in his official character, and on account of the *United States*, as that *Sheffield* gave credit, and intended to look to government for compensation.

* 3 *Caines,* 69.

*Storrs*, contra. The court must look back to the time when the plaintiff first left *Sackett's Harbour*, when, according to the testimony of *Brown*, he was employed expressly on account of the government, and he most clearly considered himself as con-

tinuing in the same employment, after the army reached the *French Mills*. He contracted with the defendant as quarter-master to the army, not as a private individual. The promise made, afterwards, by the defendant, to pay for the work, was without consideration, and could not bind him personally.(a)

THOMPSON, Ch. J. The only question in this case is, whether the defendant is personally responsible to the plaintiff for the work, labour, and services performed by him. That the defendant was a public officer, and that the benefit of the plaintiff's labour was for the public, are questions not in dispute. If the case of *Sheffield* and *Watson* (3 *Caines*, 72.) is to be supported, there can be no doubt of the defendant's liability. And independent of that case, it appears to me, he is responsible, upon well-settled principles, applicable to this class of cases. It is not to be denied that an agent may make himself personally responsible. And, as was said by this court, in the case of *Gill* v. *Brown*,* decided at the present term, (and which is a principle recognised in all the cases on this subject,) it is a question of intention in the contracting parties, and this intention must be collected from the circumstances of the case. In my judgment, the circumstances showing a personal liability in the defendant, in this case, are as strong, if not stronger, than in the case last referred to. Here is not only an absolute and unqualified promise to pay, but a refusal to furnish the plaintiff with the usual and necessary voucher, to enable him to procure compensation from the government. The case states, that the plaintiff went to work by the direction of the defendant, and, after some time, hearing that the defendant was about leaving the place, the plaintiff applied to him for a writing, or certificate, as evidence of the contract, and of the time he had worked. The reply made by the defendant, was, " *my word is sufficient, go to your work, and I will pay you when it is done.*" The defendant was too well acquainted with his business, to suppose his bare word was sufficient to enable the plaintiff to obtain his pay from the government. He well knew that some voucher from him was necessary for this purpose, if the plaintiff was to be turned over to the government. When he, therefore, told the plaintiff his

*Ante*, p. 385.

(a) See *Gill* v. *Brown*, *ante*, p. 385, and the cases there cited.

word was sufficient, and at the same time accompanied it with a promise to pay, it appears to me to admit of no other reasonable interpretation, than a personal engagement to pay. Had this not have been the intention of the defendant, his reply to the plaintiff's request would not have been, I will pay you when your work is done, but I will then give you a certificate. The promise was to pay when the work was done; and if the plaintiff was to look to the government for pay, how could the defendant know when payment would be made?

It is the duty of an agent, and the usual course of business, not only to disclose the character in which he acts, but also to furnish those with whom he deals with all requisite vouchers, to enable them to have recourse to the principal; and when this is refused, the reasonable intendment, and, I apprehend, the legal effect is, that the agent is personally liable. When one acts as the agent, or attorney, of another, he ought to do it in the name of him who gives the authority, and cannot do it in his own name. (9 *Coke*, 76.) Where services are performed for a known public agent, without any express contract, and the party relies upon an *implied* obligation to pay, perhaps the law would also imply that the service was performed for the agent in that character. But where the agent makes an *express* contract, or promise, in his own name, and not in the name, or on behalf of his principal, the agent ought to be held personally responsible. This necessarily grows out of the principle, that an agent or attorney must contract in the name of his principal. This appears to me to be a sound and reasonable distinction, and best calculated to prevent parties from being misled or deceived. In the case of *Brown* v. *Austin*, (1 *Mass. Rep.* 208.,) it is admitted by the counsel on both sides, that if an agent make an *express* promise to pay, he is personally responsible; and this seems to be taken for granted by the court. *Sedgwick*, Justice, says, there is no doubt but an agent, by an *express* undertaking, in his private capacity, makes himself personally liable. When there is an express undertaking, it must, I presume, always be understood to be by the party in his private capacity, unless otherwise expressed. No part of the plaintiff's conduct would justify a conclusion, that he did not look to the defendant for pay, or consider him liable. When application was made, by the plaintiff, to *Brown*, the deputy quarter-master, he informed him he had been at work for General *Swartwout*, and had nothing to show for his work,

NEW-YORK,
Oct. 1815.

WALKER
v.
SWARTWOUT.

and did not know to whom, or where, to look for his pay. Well might he say, he did not know where to look for pay, for the defendant had left that part of the country, as appears by the case, or is necessarily to be inferred, and had refused to give him any voucher for his services. The defendant had not pursued the usual course of the public agents, who meant to turn the workmen over to the public, for payment; as would appear, not only from the known and general practice, but from the conduct of *Brown,* who had employed this very plaintiff, and gave him a certificate of the contract, *on account of the public.* The plaintiff had good reason to conclude that the defendant considered himself bound to pay him for his work, when he not only refused to give him any certificate, that he might look to the government, but expressly promised to pay him. And I think he was fully warranted in such conclusion, upon the soundest principles of law and justice. I am, accordingly, of opinion that judgment ought to be for the plaintiff.

SPENCER, J. It was supposed, on the argument of this cause, that the case of *Sheffield* v. *Watson,* (3 *Caines' Rep.* 69.,) overruled the decision of the supreme court of the *United States,* in the case of *Hodgson* v. *Dexter,* (1 *Cranch,* 345.,) and *Macbeath* v. *Haldiman,* (1 *T. R.* 172.,) and several other cases in the *English* courts; but, on as critical an examination as I have been able to give of the subject, I cannot assent to that proposition. Judge *Livingston,* who delivered the opinion of the court, expressly states, that it was not intended to shake any of the *English* authorities on the point; and he states that the court, in *Hodgson* v. *Dexter,* regarded the contract as made entirely with a view to government; and that when that appeared, it would be unjust to charge the officer.

Whether the court, in *Sheffield* v. *Watson,* made a correct application of the principles recognised and established in these two cases, to the facts before them, may, I think, admit of some doubt; but, certainly, we did not intend to overrule them. We have all of us had occasion to remark, that, though we concur in the point decided, unless our dissent be stated, yet we are not committed by the illustrations of the judge who happens to give the opinion. I make this remark here, because, I confess, the train of the judge's reasoning, in *Sheffield* v. *Watson,* does not appear to me perfectly reconcilable with the declara-

tion, which, I am fully convinced, is correct, that we did not intend to shake any of the *English* authorities.

I shall forbear stating the particular circumstances in *Sheffield* v. *Watson*, which may distinguish that case from the two leading ones already cited. It appears to me, that the opinion of *Ashhurst*, J., in *Macbeath* v. *Haldiman*, is entitled to the most unreserved respect, for its clearness and perspicuity. He observes : " A person acting in the capacity of an agent may, undoubtedly, contract in such a manner as to make himself personally liable ; and that (he says) brings it to the true question, namely, whether, from any thing that passed between the parties at the time, it was understood, by them, that the plaintiff was to rely upon the personal security of the defendant." He proceeds to state the facts, and then adds, " that there is nothing in this transaction to fix the defendant, or to show that the plaintiff looked to him as his debtor at the time the credit was given." *Buller*, J., in the same case, uses these strong expressions : " And in any case where a man acts as agent for the public, and treats in that capacity, there is no pretence that he is personally liable." In ascertaining the intention of the parties, the court regarded the existing facts when the goods were furnished, and the subsequent conduct of the parties.

The chief justice, in delivering the unanimous opinion of the court, in *Hodgson* v. *Dexter*, observes : " It is too clear to be controverted, that where a public agent acts in the line of his duty, and by legal authority, his contracts, made on account of the government, are public, and not personal."

After stating the facts, which went to show that the house was taken on account of the public, in pursuance of authority, and that the contract was made by the head of a department, for his use as an officer of government, he then adds : " Under these circumstances, the intent of the officer to bind himself personally must be very apparent indeed to induce such a construction of the contract."

It has been argued, in this case, that the defendant promised to pay the plaintiff for his work when it was done. The same argument was urged in *Hodgson* v. *Dexter*, and the fact, in that case, was, that Mr. *Dexter* covenanted, under his seal, to keep the premises in good repair, inevitable casualties, &c., excepted, and to yield up the same at the end of the term, the same so

well and sufficiently kept in repair; but the court holding it to be a contract entirely on behalf of government, considered the obligation to be on the government only, and not a personal undertaking.

The facts in this case show very clearly, that it never was in the contemplation of either party, originally, nor until some time after the labour was done, that the defendant should be personally responsible. The plaintiff was employed, on the public account, to proceed down the *St. Lawrence,* as a boatman, with the army, and received a certificate of his being thus employed. On his arrival at the *French Mills,* with the army, the defendant, who was known to the plaintiff to be quarter-master general, and acted as such, directed the plaintiff to go to work with the rest of the hands, for the army, and that they should each be allowed two dollars a day. The plaintiff, after working about six weeks, learning that the defendant was about leaving the place, applied to him for a writing, or certificate, as evidence of the contract, and the time he had worked. The plaintiff drew his rations from the public store-house, and, after leaving the *French Mills,* applied to Major *Brown,* an assistant quarter-master general, stating that he had been to work for General *Swartwout,* but had nothing to show for his work, and did not know to whom, or when, to look for his pay; upon which Major *Brown* advanced him 20 dollars, as assistant quarter-master general.

These facts abundantly show, that the defendant's contract with the plaintiff was as a public agent, and that the plaintiff did not work, nor contract to work, with a view to the defendant's personal responsibility.

I entirely agree with Chief Justice *Marshall,* that, to hold a public agent, acting in the line of his duty, liable for contracts made on account of government, would be productive of the most injurious consequences to the public, as well as to individuals; and that no prudent man would consent to become a public agent, if he should be made personally responsible on the public account.

This is not the case of an insulated boatman. The same principles which will render the defendant liable in this case, will, for aught I perceive, make him liable to all the boatmen who descended the *St. Lawrence* with the army; for it seems the de-

fendant set them all at work, at two dollars a day; and hence the greater improbability that he meant to subject himself. I am, therefore, of opinion, that the defendant is entitled to judgment.

VAN NESS, J., YATES, J., and PLATT, J., were of the same opinion.

Judgment for the defendant.