## Brown, Admr., *vs.* Rundlett.

An agent may render himself personally liable for the performance of his contracts entered into for the benefit of his principal. And whether the principal or agent be liable, is in general a question of intention, to be gathered from facts and circumstances.

The proper inquiries to be made in such case is, to whom was the credit given?

The question is one of fact, to be determined by the jury; or of law, arising upon facts found or agreed, to be decided by the court.

The contracts of the agents of corporations, or *quasi* corporations, form no exception to the general rule.

*Semble,* the better opinion is, that the same rule is applicable in the case of public agents, or agents of the government.

A surveyor of highways is expressly authorized by the provisions of § 8, of the act entitled " an act for mending and repairing highways," 1 *N. H. Laws* 580, to purchase materials for the repairs of highways in his district, when necessary, at the cost and charge of the town.

Accordingly, where a surveyor of highways, on account of the town, purchased a quantity of gravel necessary for the repairs of a highway in his district, it was *holden,* that the town was liable and not the surveyor.

It is in general sufficient for an agent, in order to exonerate himself from personal liability, that he shall disclose his character at the time of the contract, and act in that character, so as to give a remedy over against his principal.

It is not sufficient to charge a surveyor personally with the value of materials purchased on account of the town for the repairs of a highway in his district, in a case in which his agency is disclosed, and the credit is originally given to the town, that he, after the delivery of the gravel, shall have refused to certify to the selectmen the true price agreed to be paid for the gravel.

Assumpsit, on an account annexed to the writ.

The account was as follows :

1838. October 18.   To 87 loads of gravel, at 8 cents per
                    load,                                $6.96

The action was brought to the court of common pleas upon an appeal from the judgment of a justice of the peace. At the trial in that court, the plaintiff offered to show that the defendant was a surveyor of highways in the town of Epping; that he took from the land of the plaintiff's intestate eighty-seven loads of gravel, to be used on the highways, which was actually so used, and agreed that the plaintiff's intestate, who was then living, should receive therefor at the rate of eight cents per load; that

the plaintiff requested the defendant to give him a certificate to the selectmen that the defendant had received the gravel at that rate per load, in order that the plaintiff might receive the amount from the selectmen of Epping ; that the defendant refused to give him a certificate for the gravel at eight cents per load, but said he would give a certificate for it at six cents per load ; that the defendant told the selectmen that the agreement was to pay only six cents per load, and therefore, on application by the plaintiff for his pay, they refused to pay him more than six cents per load, and that the selectmen said they would pay the plaintiff eight cents per load, on his producing a certificate from the defendant that the price was eight cents, but refused to pay that sum unless a certificate for it was procured from him.

The gravel was admitted to have been charged originally on the books of the plaintiff's intestate against the town of Epping, as delivered to the defendant as a surveyor of highways.

Upon this proposition by the plaintiff to prove the above facts, the defendant contended that, if proved as alleged, they furnished no ground of action against the defendant, but the plaintiff's remedy was against the town. And the court ruled that the above facts, if proved, gave the plaintiff no cause of action against the defendant.

The defendant also contended, that if any action was maintainable against him, it must be a special action on the case, and not general *indebitatus assumpsit.*

A verdict was taken, by consent, for the defendant, subject to the opinion of this court ; and it is to be set aside and a new trial granted, or judgment rendered thereon, according to the opinion of this court.

*Christie,* for the plaintiff. We rely upon the case of *Freeman* vs. *Otis,* 9 *Mass.* 272, which settles this precise case.

Generally, a public agent is not liable ; but if by his interference he prevents the remedy, he makes himself answerable. The same doctrine is to be found laid down in the opinion of Mr. Chief Justice *Thompson,* in the case of *Walker* vs. *Swartwout,*

12 *Johns.* 444. The first case, that is, the case in Massachusetts, goes to the point of the form of the action, as well as the cause of action.

In the case before the court, there was direct negotiation between the parties; so also was the fact in the Massachusetts case. I would refer the court to the case of *Gidley* vs. *Lord Palmerston* upon this subject, 3 *Bro. & Bing.* 275; 7 *E. C. L. Rep.* 434. Lord Palmerston's case I think differs from this case. Lord Palmerston had nothing to do with making the bargain.

*Tuck*, (with whom was *James Bell*,) for the defendant. *Woodes* vs. *Dennett*, in the county of Strafford, December term, 1837, 9 *N. H. Rep.* 55, is against the doctrine of the cases cited. That case overruled the doctrine of the case of *Freeman* vs. *Otis*, 9 *Mass.* 273. *Woodes* vs. *Dennett* decided that an agent is not bound, unless he has used apt words to charge himself, even when he has no authority. The case of *Gidley* vs. *Palmerston*, 3 *Brod. & Bing.* 275, was the case of an agent of the government.

Public agents fail to bind themselves, when private agents would bind themselves. *Story on Agency* 307–8.

The gravel, in the case before the court, was charged to the town, and there never was any contract entered into by the defendant personally. He never used any apt words to charge himself, nor any words relating to himself personally; and even if he had used apt words to bind himself, it would be of no consequence, since he had authority to bind the town, and used apt words for that purpose also.

In the case in Massachusetts, the government could not be sued, and so the defendant in that case must be sued or no one. Here, the town could have been sued, and all that the defendant did was to refuse to give a certificate that the gravel was to be paid for at eight cents per load, which was claimed by the plaintiff, but would give a certificate that it was to be paid for at six cents per load.

*Christie*, in reply. The words used by the defendant are as applicable to the agent as to the town. I refer the court to the

case, for the words used. Generally, where a party says, as did the defendant in this case, that another shall receive pay, he means that it shall be received from him who so says. Rundlett did not merely lie by, but he went to the agents of the town, and misinformed them as to what that contract was, and so prevented payment.

WOODS, J. This is an attempt to charge a highway surveyor personally with the price or value of certain gravel, furnished at his instance and request for, and used in the repairs of a highway, in the town of Epping.

The question to be decided is, whether, upon the facts reported by the judge, the defendant is personally liable as having contracted upon his own account, or by reason of his conduct after the contract was made for the gravel, or whether the claim is one for which the town of Epping is alone liable.

Was the promise to pay for the gravel a personal undertaking originally on the part of the defendant? It is not at this time to be doubted, that an agent may make himself personally responsible upon contracts entered into for the benefit of his principal; and it is generally a question of intention in the contracting parties, whether the principal or agent be liable, and this intention is to be gathered from all the circumstances of the case.

All the cases of this class turn upon the question, to whom was the credit in fact given? Who was intended to be made responsible, the agent or the principal? *Hodgson* vs. *Dexter*, 1 *Cranch* 363; *Sheffield* vs. *Watson*, 3 *Caines's R.* 72; *Gill* vs. *Brown*, 12 *Johns.* 385; *Macbeath* vs. *Haldiman*, 1 *Term R.* 172; *Walker* vs. *Swartwout*, 12 *Johns.* 444. It is then a question of fact, to be determined by the jury, or of law, arising upon a given or agreed state of facts. The agents of corporations, or of *quasi* corporations, form no exception to the general rule upon this subject. *Underhill* vs. *Gibson*, 2 *N. H. Rep.* 352. And the better opinion seems to be, that the same doctrine is applicable in the case of public agents, or agents of the government, and that if the credit be in fact given to them, and not to the government, the agents themselves are responsible. The mere fact that they are

public agents will not protect them against a liability intentionally and personally assumed. *Rathbon* vs. *Budlong*, 15 *Johns.* 1; *Sheffield* vs. *Watson*, 3 *Caines's R.* 69; *Myrtle* vs. *Beaver*, 1 *East* 135; *Melchart* vs. *Halsey*, 3 *Wils.* 149; *Jones* vs. *Le Tombe*, 3 *Dall.* 384; *Rice* vs. *Chute*, 1 *East* 579, *and note (a)*; *Owen* vs. *Gooch*, 2 *Esp. R.* 567; *Brown* vs. *Austin*, 1 *Mass.* 208; *McWilliams* vs. *Willis*, 1 *Wash.* 199; *Underhill* vs. *Gibson*, 2 *N. H. Rep.* 352.

There are cases in which the principal or the agent is liable, at the election of the creditor. But the creditor, having once made his election, is bound by it. *Ousterhout* vs. *Day*, 9 *Johns.* 114; *Owen* vs. *Gooch*, 2 *Esp. Cas.* 568; *Garnham* vs. *Bennet*, *Strange* 816; *Farmer* vs. *Davies*, 1 *Term R.* 108.

Chitty states the rule in relation to the liability of agents thus: "When a person has contracted in the capacity of agent, and that circumstance is known at the time to the person with whom he contracted, such agent is not in general liable to an action for the nonperformance of the contract, even for a deceitful warranty, if he had authority from the principal to make the contract." See, also, *Adams* vs. *Hopkins*, 5 *Johns.* 252.

In the case at bar, no doubt exists of the authority of the defendant to bind the town by a contract made on behalf of the town, for the gravel furnished for the repairs of the highway. The act, entitled "an act for mending and repairing highways," § 8, expressly authorizes surveyors of highways "to purchase, at the cost and charge of their respective towns, all such timber, plank, and other materials, as are necessary for mending and repairing the highways and bridges in their respective districts." 1 *N. H. Laws* 580.

The necessity of the gravel, as a material for making the repairs, is not questioned. The defendant was a surveyor of highways in fact, and the plaintiff charged the gravel originally upon his books against the town of Epping, as being delivered to the defendant as such surveyor. Here, then, is abundant evidence that the character in which the defendant was acting was known and recognized by the plaintiff, and that the credit was in fact

Brown *v.* Rundlett.

given, and intended to be given, to the town and not to the defendant. The case in fact furnishes conclusive evidence of the liability of the town. No doubt exists on that point. The defendant was fully authorized to bind the town, was acting officially in behalf of the town and in its business; the materials purchased were used for the purposes of the town, and applied for its benefit; the plaintiff by his charge upon his book most distinctly showed his understanding of the contract, and, if it could be regarded as a case in which an election of debtors might be made, he must be regarded as having made such election. And it is no less clear, that the defendant did not regard himself as contracting on his personal responsibility; and the agents of the town, whose duty it was to see that the liability of the town was discharged by a payment of the claim made, so far as it was known by them to be justly due, distinctly recognized the liability of the town, and offered to pay.

It may well be considered, then, we think, that it was the intention of the defendant to bind the town only, and of the plaintiff to rely upon the town for compensation for the gravel furnished for the purposes of the town at the instance and request of the defendant; and that the town, at the time of the contract, was alone liable, and that too to the extent of the agreed price of the gravel, whatever that might have have been.

Did the conduct of the defendant, in refusing to give a certificate of the amount of the plaintiff's claim against the town, at the rate of eight cents per load for the gravel, as claimed by the plaintiff to be the agreed price, but denied by the defendant as being the price stipulated, render him chargeable for the gravel, instead of the town? Did his refusal change the responsibility for the payment of the price of the gravel, which originally rested upon the town, and charge upon the defendant, and authorize the plaintiff to claim of him the value or price agreed for the gravel, for which he was not originally liable, according to the intention and understanding of the parties making the contract? The plaintiff claims that such is the effect of the refusal to give the certificate required by the plaintiff, and refers to the case of *Freeman* vs. *Otis*, as an authority sustaining the position.

In that case the court say, that " Where a public agent makes a contract in the name and behalf of the government, it is a point well settled that the agent is not liable to the action of the party contracted with, who must look to the government. But if such agent should deny to the government that he had entered into such a contract, and by such interference prevent the party from his remedy as against the government, he must be liable, as he has by his conduct in effect disavowed his acting in the character of a public agent. On this ground, we think the verdict is right."

The learned court, in that case, put the decision upon the ground, substantially, that the conduct of the defendant showed that he did not in fact contract in behalf of the government originally, or so intend, and that in such a case he is to be regarded as having in fact contracted on his personal responsibility. His refusal so to certify, or, as the court say, his denial " to the government that he has entered into any such contract," rebuts the presumption that he has so done, arising from the fact that he was at the time a public agent and acting as such. Upon no other ground is there any pretence, as we conceive, that the decision can be sustained ; for it cannot at this time be questioned, that where, in any such case, a person acts as agent for the public, and treats in that capacity, he is no wise personally liable. The decisions upon this point are entirely agreed. *Macbeath* vs. *Haldiman*, 1 *T. R.* 172 ; *Unwin* vs. *Wolseley*, 1 *T. R.* 674 ; *Gidley* vs. *Palmerston*, 3 *Brod. & Bing.* 275 ; *Hodgson* vs. *Dexter*, 1 *Cranch* 345, *and other cases before cited.*

Mr. Ch. Jus. *Thompson,* in delivering a dissenting opinion in the case of *Walker* vs. *Swartwout*, 12 *Johns.* 444, says : " It is the duty of an agent, and the usual course of business, not only to disclose the character in which he acts, but also to furnish those with whom he deals, with all requisite vouchers, to enable them to have recourse to the principal. And when this is refused, the reasonable intendment, and I apprehend the legal effect, is, that the agent is liable." And he farther remarks, that " no part of the plaintiff's conduct would justify a conclusion that he did not look to the defendant for pay, or consider him liable ;" and " the defendant had not pursued the

usual course of public agents, who meant to turn the workmen over to the public for payment." No authority is cited by the learned chief justice in support of the position assumed, in the broad sense in which it is stated, viz. that the "legal effect" of such refusal is to charge the agent. And it is entirely apparent that it was not a necessary element in the opinion which he form- ed and pronounced; for upon the view which he took of the other facts in the case, it was never the understanding of the plaintiff in that case that he was to trust the government alone, and had no right or claim upon the defendant, or to consider him person- ally liable. And it is well settled, that in order to exonerate the agent from liability, it must appear that it was the understanding of the party giving the credit that it was given to the public, or other principal. But neither the decision in *Freeman* vs. *Otis*, nor the opinion of Mr. Ch. Jus. *Thompson*, when viewed in con- nection with the facts of those cases, are necessary to be regard- ed as going farther than to hold that the refusal of the usual certificate that the employment was on account of the public, conclusively rebuts the inference that the law would otherwise make, from the public character of the agent of the government, that the contract was made by him in that character, in the ab- sence of an express contract, or circumstances clearly showing the intention of the parties; and that, too, only in a case in which a certificate is requisite to give the party a remedy over against the principal, and where in effect its refusal will defeat such remedy. It was in relation to a case of that character that the opinion was pronounced and the decision made; and it may be that they are not to be understood to go farther, since the result contemplated in the decision in Massachusetts, as jus- tifying the decision, could not follow, except in the case of an agent of the government, viz. the loss of the compensation due, by reason of such refusal. But Mr. Justice *Spencer*, who de- livered the judgment of the majority of the court in *Walker* vs. *Swartwout*, before referred to, remarks: "The facts in this case show very clearly that it never was in the contemplation of either party, originally, nor until some time after the labor was done, that the defendant should be personally responsible. The plain-

Brown *v.* Rundlett.

tiff was employed on the public account, to proceed down the St. Lawrence with the army, and received a certificate of his being thus employed. On his arrival at the French Mills with the army, the defendant, who was known to the plaintiff to be quartermaster general, and acting as such, directed the plaintiff to go to work with the rest of the hands, for the army, and that they should be each allowed two dollars per day. The plaintiff, after working about six weeks, learning that the defendant was about leaving the place, applied to him for a writing or certificate as evidence of the contract, and the time he had worked. The plaintiff drew his rations from the public store-house, and after leaving French Mills applied to Major Brown, an assistant quartermaster general, stating that he had been at work for General Swartwout, but had nothing to show for his work, upon which Major Brown advanced him twenty dollars, as assistant quartermaster general.

" These facts abundantly show that the defendant's contract was with the plaintiff as a public agent, and that the plaintiff did not work, nor contract to work, with a view to the defendant's personal responsibility." Judgment in that case was rendered accordingly for the defendant.

The judgment of the court, in the last case cited, goes clearly to show that, after all, the question, in a case even where the public agent had refused the usual certificate of employment on account of the public, is, upon whose responsibility did the plaintiff in fact, originally, at the time of entering into the contract, rely for pay ; and that such refusal can never, in a case in which it is shown that the contract was entered into on the public account, and the credit was given to the public, have the effect to create a promise on the part of the agent, which it is proved he never made, and throw upon him a responsibility which he never agreed to assume. The principle applicable in cases of this kind, we apprehend, is correctly stated in *Mauri* vs. *Heffernan*, 13 *Johns.* 58. It is there said, by Mr. Ch. Jus. *Thompson*, that " the correctness of the legal position stated to the jury, and by which they were to test the evidence, has not been questioned, that if a party would excuse himself from responsibility, because

Brown *v.* Rundlett.

he acted in the capacity of agent, he ought to show that he communicated to the other party his situation as agent, and that he acted in that capacity, so as to give a remedy over against the person whom he represented as his principal." And we are of the opinion that an agent, either of the government or a private individual, or of a corporation, need go no farther to exonerate himself from responsibility for the nonfulfilment of contracts entered into by him in behalf of his principal.

The doctrine is laid down, as we have already shown, that an agent is not liable, even for a deceitful warranty, if he had authority from his principal to make the contract. 1 *Chitty's Pl.* *34, 35, and notes (g) and (1,) and cases there cited.*

In the case before us for decision, the defendant's authority to contract on behalf of the town is not questioned ; and we have seen that he did contract as the agent of the town, and there is no pretence that the plaintiff ever looked to or relied upon the defendant's responsibility, until after the contract was made, and the gravel taken and used for the purposes of the town, nor even until the commencement of the present action. He made his claim originally against the town, and persisted in it, so long as there is any thing to show in what way or against whom he set up claim for compensation for the gravel, up to the time of the present action.

And this case does not form an exception to the general rule, that the agent is bound or not, according to the agreement and intention of the parties in making the contract.

If the case of *Freeman* vs. *Otis* be law, which is a question we have no occasion to determine, it is enough that the present case falls not within the principle of that decision.

It seems, then, to be supposed, that, in order that Freeman should be enabled to enforce his claim, or to get it allowed and paid, as against the government, that the certificate of the agent to the government was indispensable. If so, it is clear there was no such necessity in the present case. Redress was in the power of the plaintiff, by a resort to our courts of law. For that purpose no such certificate was necessary. In fact, no certificate to the town, or its agents, that the gravel was purchased on their

credit, could have been by any possibility of any use, as a notice to the town or its agents, since it was known to the selectmen, the proper agents of the town to settle, adjust and pay the claim. All that the defendant was asked to certify, was, that it was sold at eight cents per load, instead of six cents per load, which was a fact in dispute, and the only one. If such were the fact, the refusal to certify the truth of it could not so far prejudice the rights of the plaintiff as to warrant him in setting up a claim against the defendant. Such refusal could not deprive the plaintiff of the power of redress. He could have brought his action against the town, and made his proof against the town, as he offered to do in this case against the defendant, as to the price agreed to be paid for the gravel. Nay, more ; he might have added to the other evidence, that of the defendant, which would have been quite as efficient for the purpose in view, as his mere certificate, which, if made at the time when it was requested to be made, could only, except 'at the pleasure of the agents 'of the town, have been evidence or not, according as it might be regarded as a part of the *res gestæ* or not, it being made long after the contract, and after the delivery of the gravel, and the repairs of the road, and after, as it would seem, the price of the gravel had been made a controverted question, and it might be even after his office as surveyor had expired, its competency, as proof of the fact of the price agreed, was at least questionable. And it is not to be taken, that if the town had been sued and the defendant called as a witness, he would not have testified to the truth. The contrary is to be presumed. The present case is, in its facts and in principle, much like the case of *Walker* vs. *Swartwout*, as the facts in that case were regarded by the majority of the court. There, the plaintiff had a certificate that he was employed to go down the St. Lawrence on the public account, but no certificate of the length of his time of service after his arrival at French Mills ; and the refusal or neglect of General Swartwout to give him such certificate was made a ground of claim for charging him with the services of the plaintiff, which were proved to have been rendered on the public account, at his instance and by his direction ; but the majority of the court de-

Brown *v.* Rundlett.

nied the soundness of the plaintiff's position, and determined that the case was not excepted from the operation of the general principle or rule of law, that all such contracts, liability and rights of the parties to them, are governed by the nature of the contracts, and the intention of the party at the time of making them, as evidenced by the contracts themselves.

The point relating to the form of action, it is not necessary to decide.

On the whole, we see no reason to doubt the correctness of the ruling of the judge at the trial in the court below, as certified to this court, and accordingly the opinion of the court is, that there must be

*Judgment on the verdict.*