## WHITESIDE vs. JENNINGS.

1. A bond for titles, executed by commissioners who are appointed by the Orphans' Court to sell the real estate belonging to a decedent, conditioned that the commissioners shall make or cause to be made to the obligee a fee simple title to the land, is binding upon the obligors personally, when they exceed their authority and fail to bind the decedent's estate.

2. The obligee's notes given for the purchase money of the land constitute a sufficient legal consideration for the execution of the bond.

3. *It seems*, that the measure of damages in an action on a bond for titles is the value of the land at the time of the breach.

ERROR to the Circuit Court of Benton. Tried before the Hon. L. P. Walker.

THIS was an action of debt by Jennings against Whiteside and others, on a bond executed by the defendants, who had been appointed by the Judge of the Orphans' Court commissioners to sell the real estate belonging to Owen Jenkins, deceased, conditioned that they should make or cause to be made to the plaintiff a fee simple title to certain lands therein described. Suit had been brought and judgment recovered against the plaintiff on his notes for the purchase money, in the name of the payees for the use of the administrator of Owen Jenkins, and the money had been collected and paid to the administrator. The plaintiff proved that after the payment he had requested the defendant to make him a fee simple title to the land, and that the defendant refused, the decedent's title to a part of the land being defective.

The court charged the jury that the execution of the notes for the purchase money was a sufficient legal consideration to support the bond; that the bond was binding upon the defendant personally; that the damages to which the plaintiff was entitled was the value of the land at the time of the breach of the bond; and that the breach occurred at the time of a demand for title, after the payment of the purchase money, and the defendant's refusal, or acknowledgment of inability to make title. There was a verdict and judgment for the plaintiff.

J. B. MARTIN, for plaintiff in error:

1. The defendant was not liable personally on the bond sued on.

Whiteside v. Jennings.

When one acts in the capacity of a public agent, and that fact is known to those with whom he contracts, he cannot be held personally liable, unless it is made to appear clearly that it was the understood and received intention of the parties that he should be so bound; and the *onus probandi* in such case is upon the party who seeks to make the obligation a personal one. It is immaterial, too, whether the contract can be enforced against the principal, or is a mere nullity. This is a question with which, in the language of Lord Mansfield, " the court has nothing to do." This exception in favor of public agents is founded upon the most obvious reasons. Were the law otherwise, few persons would be found willing to assume the duties and responsibilities of such agencies. The official character of such agents is usually a matter of general notoriety. The extent of their authority may easily be ascertained by all who have any interest in knowing it, and there is therefore no danger of their imposing on the public by assuming a character to which they are not entitled, as in the case of mere private agents.—Story on Ag., §§ 302 to 307; Macbeath v. Haldimand, 1 Durn. & East, 172; Hodgson v. Dexter, 1 Cranch, 345; 12 Wend. 179; 12. Johns. 444; 9 Mass. 272; 2 Wend. 375; 8 Cow. 191; 3 Conn. 560; 3 Espin. 567.

There is no reason founded either in law or justice, for sustaining this exception in favor of public agents, which does not equally apply to this case. The Orphans' Court is the real vendor. The commissioners are the mere instruments of the court through whom the sale is effected, and they are responsible only to the court. Their office is not voluntarily assumed; it is one which the court may impose upon them and compel them to perform. They are entitled to no compensation for their services. Their interest is not in any manner affected, either by the amount of their sale, or the character of the title which it passes. The extent of their power and authority is defined by law, of which none can claim to be ignorant. The capacity in which they act, and the directions for their conduct, are matters of record in the Orphans' Court, and open to the inspection of all.—9 Ala. 285; 7 ib. 855; 10 ib. 636.

2. There was no legal consideration for the bond to make it personal.

There was no shadow of advantage or benefit accruing to the

defendant, or expected to accrue.—3 Ala. 316; 11 Wend. 106; 1 Dallas, 17; 2 Stew. & Por. 267.

The execution of the notes for the purchase money was not sufficient, as being an injury to the plaintiff. This rule only applies where the injury, trouble or inconvenience, done or suffered by the promisee, is the immediate effect and consequence of the promise relied on. Before it can apply in this case, it must be shown that the plaintiff was induced to make the purchase and execute his notes, in consideration that the defendant would execute the bond and be bound personally by it; whereas the record shows the very reverse to be true.—8 Ala. 131; 12 ib. 124; 3 Conn. 560; 15 Johns. 1; 1 Story on Cont., § 115.

3. The charge requested should have been given. The intention of the parties, when it can be ascertained, constitutes the "pole star" of construction. Nothing can be implied against the express understanding and agreement of the parties.—2 Black. Com. 379; Chitty on Con. 67; Story do., § 231; 13 East. 74; 4 Dallas, 345; 2 Story's R. 122. The mere fact that the real contract of the parties cannot be enforced does not authorize the court to substitute an entirely new contract which can be enforced. And yet this is the effect of the refusal to charge as asked.—Story on Con., § 11; Chitty do. 80; 2 Kent's Com. 477; Powell on Con. 371; 1 Durn. & East, 172; 5 ib. 6; 6 Hill's (N. Y.) R. 550.

4. The plaintiff should only have been allowed to recover the amount of damages actually sustained by him. He should not have been allowed to recover for that portion of the land which the defendant offered to convey, and which was unincumbered.— 5 Johns. 49; 11 N. Hamp. 74; 12 Ala. 820; Sedgwick on Dam. 175. The true measure of damages was the purchase money and interest, and not the value of the land.—2 Wend. 399; 2 Black. 1078; 2 Bibb, 415; 16 Maine, 164; 3 Caine's Ca. 111; 4 Johns. 1; 2 Hill, 105; 2 Bibb, 273.

John Foster, contra:

1. Whenever a party, by an instrument under seal, undertakes to stipulate for another, if he acts without authority or beyond his authority, so as not to bind his principal, he is personally responsible, even although such was not his intention.— 3 Mass. 162; 5 East, 148; 2 Strange, 955. The only excep-

tion is in favor of government agents, contracting on behalf of the public; and even in such cases the agent is personally responsible, unless it clearly appears that he made the contract in his official character, and that the contracting party looks to the government alone.—3 Caines, 69. In this case the commissioners could not have signed the name of their principal, and if they are not bound personally, their contract is a mere nullity.—3 Dev. 179; 8 Mass. 207; 2 Mass. 455; 15 Pick. 428; 9 Johns. 335; 3 Wend. 94; 13 Johns. 307.

When an agent wishes to be excused from the obligation into which he enters, he must affix the name of his principal; if he does not do so, but signs his own name as agent, it becomes his bond, and not his principal's.—2 East, 142; 5 ib. 148; 13 Mass. 406; Story on Ag., § 147; 8 Conn. 19; 5 Mass. 299; 6 ib. 58; 4 ib. 108.

2. The measure of damages was the value of the land.— Watts v. Sheppard, 2 Ala. 447; Pinkston v. Huie, 9 ib. 252. The plaintiff was not bound to receive a title to part, until it was perfected to the whole.—2 Ala. 447.

COLEMAN, J.—The first and most important question presented for our consideration in this case is, whether by law the defendant in the court below can be charged *personally* on the covenant sued on? The covenant is in these words:

" THE STATE OF ALABAMA, BENTON COUNTY.

"Know all men by these presents, that we, Joel Graham, John W. Whiteside and William Champion, commissioners appointed by the honorable the Judge of the County Court of said county, to sell the real estate of Owen Jenkins, deceased, are held and firmly bound unto John B. Jennings in the penal sum of $998, for the payment of which well and truly to be made, we bind ourselves as commissioners jointly and severally, firmly by these presents. Signed and sealed, this 2d of Oct. 1841.

" The condition of the above obligation is such, that whereas the above bounden, Joel Graham, John W. Whiteside and Wm. Champion, have this day sold to John B. Jennings one forty acre tract of land lying in the south-west corner of the 16th section; also, thirty acres of land known as the mill place, all in township 14, range 9, east, in the Coosa land district, on a credit of one and two years, in equal instalments, and have taken

Whiteside v. Jennings.

the notes of the said John B. Jennings, with interest from date, as securities; one note payable twelve months after date, for the sum of $248 50 cts., with interest from date, and the other for the same amount, with interest from date, due twenty-four months after date; both notes bear date with this obligation. Now when said John B. Jennings pays off said notes and interest, then the *commissioners shall make or cause to be made to the said John B. Jennings, titles in fee simple to said land above described*, on the happening of which, then this obligation to be void, and not else. Witness our hands and seals, day and date above written. (Signed)          JOEL GRAHAM,           [seal.]
                                                   JOHN W. WHITESIDE,    [seal.]
                                                   WM. CHAMPION,         [seal.]"

I think it must be admitted, upon a proper consideration of the language of the bond, in connection with the other proof in the case, that it was the intention of the defendant to bind the estate of the deceased, in the event of a failure to make the titles, and not to bind himself personally. I think it also evident, that the plaintiff gave his notes and accepted the covenant under the belief that he received a good and effectual obligation in the covenant to make to him a fee simple title to the land. It will be perceived, upon an examination of the case as stated in the record, and of the statute (Clay's Dig. 225,) under which the sale of the land was made, that the defendant had no authority to bind the estate in the manner he attempted to bind it. The question, therefore, occurs, whether the defendant thus failing to bind the estate, thereby became personally liable on the covenant? It is laid down as the general rule of law on this subject, that when a party contracts "*in autre droit*" and fails to bind his principal, by either acting without authority, or beyond his authority, he is to be held personally responsible. The leading American authority in support of this doctrine, is the case of Sumner, adm'r, v. Williams et al., 8 Mass. 208, in which it was held, in substance, that administrators selling real estate by order of court, as in this case, were subject personally to the payment of damages for defect of title, contrary to their intention when they entered into the contract, and when they were to derive no personal benefit from the execution of the trust as administrators by the sale of the estate. There is an able dissenting opinion in the case by Judge Sedgwick, but the doc-

Whiteside v. Jennings.

trine held by the majority of the court was subsequently fully affirmed in the case of Whiting v. Dewey, 15 Pick. 433. In this case it was held, that where the guardians of a minor covenanted, in their capacity as guardian, that the father of the minor died seized of the premises, and that they *in their capacity aforesaid,* in right of the minor, were lawfully seized of the premises, the guardians were personally liable on those covenants.

The exception to the foregoing general rule is, where the party contracting is a public agent and contracts on the public account. See the cases of Macbeath v. Haldimand.—1 Durn. & E. 172; Unwin v. Wolseley, 1 ib. 674; Hodgson v. Dexter, 1 Cranch, 345; Brown v. Austin, 1 Mass. 208; Walker v. Swartwout, 12 Johns. 444, in all of which the parties sued contracted on the *public* account, and were therefore held not liable. In all the cases of this class, it will be found that the decisions are based upon grounds of public policy; that is, if agents for the government or the public should be held personally liably on contracts avowedly made by them on public account, few persons would be found willing to undertake such agencies, and the public service might be delayed or prejudiced. I think it is correctly argued, that if the mere intention of the agents not to bind themselves, as shown in this class of cases, could have been deemed sufficient for their defence, the court would not have resorted to the dangerous ground of State policy to relieve them; and that, placing the exception to the rule on this ground alone, goes far to establish the rule itself.

It is strongly urged that the rule bears hardly in this case, as the defendant received no benefit from the contract, and did not intend to bind himself; but the rule has stood the test of time, and is well sustained by reason and authority. The legal presumption is, that the plaintiff was induced to pay the purchase money for the land in consideration of the defendant's undertaking to make a good title, and if the defendant neglected to inform himself as to his personal liability, the defendant, and not the plaintiff, ought to lose by that negligence.

There are many analogous cases going strongly to sustain the foregoing general rule. As in the case of Appleton v. Binks, 5 East, 148, where the attorney *without any authority* stipulated for his principal, and was held personally liable. In Thatcher v. Densmoore, 5 Mass. 595, it was decided that the guardian of an

insane person, who had given promissory negotiable notes to the plaintiff for the *proper debt* of his ward;. and expressed in the notes *that he did it as guardian*, was bound in his private capacity. In Barry v. Rush, 1 Durn. & E. 691, where the defendant bound himself *as administrator* to abide by an award to be made touching matters in dispute between his intestate and another, and the arbitrators awarded that he as administrator should pay,. &c.,.it was held that he could not plead *plene administravit* to debt on the bond.. In these cases it is plain that the parties contracted with the intent not to bind themselves, but to bind their principals only, and yet they were held personally liable, because they had no authority to bind their principals; nor does it appear that they personally received any consideration. for their undertaking..

Secondly, it is contended that there was no sufficient consideration for the execution of the bond sued on, &c. In addition to the cases already referred to, I think it is only necessary to advert to the definition of a *legal consideration*, to see that this objection is untenable.—Story, in his work on Contracts, § 113,. says, that "a valuable consideration is a legal consideration emanating from some injury or inconvenience to the one party, or from some benefit to the other;" that, in order to constitute a sufficient consideration, it is sufficient that something valuable flows from the person to whom it is made, and that the promise is the inducement to the transaction.—2 Black Com. 297; Story on Part. 183; Violett v. Patton, 5 Cranch, 142. I think it cannot be doubted, that the execution of the notes by the plaintiff for the purchase money in this case, constituted a sufficient consideration.

Thirdly, it is urged that the true measure of damages in this case is the purchase money and interest thereon from the date of its payment, and that the court erred in instructing the jury to the contrary.

There is some contrariety in the decisions of the courts of the different States on this question. In Kentucky, it has been held that on a covenant to convey, where the vendor is, *without fraud*, incapable of making a title, the rule of damages is the purchase money with interest, &c., but where the vendor acted in bad faith, the plaintiff would be entitled to recover damages for the enhanced value of the land.—McConnell v. Dunlap, Hardin's

R. 41; Patrick v. Marshall, 2 Bibb 40; Fisher's Heirs v. Kay, 2 ib. 434. In New York the same doctrine was held in the case of Baldwin v. Munn, 2 Wend. 399. A different rule is laid down by the Supreme Court of the United States. In Hopkins v. Lee, 6 Wheat. 109, it was decided that in an action of covenant for not conveying land, &c. the value of the land at the time it ought to have been conveyed, was the measure of damages. In this case the following language was held by the court: "The price being settled by the contract, which is generally the case, makes no difference, nor ought it to make any; otherwise the vendor, if the article has arisen in value, would always have it in his power to discharge himself from the contract and put the enhanced value in his pocket; nor can it make any difference in principle whether the contract be for the sale of real or personal property," &c.

In Hill v. Hobart, 16 Maine, 164, it was held that the proper and legal compensation was the value of the land at the time of a demand made and a refusal or neglect to perform, and that in finding that value, the jury ought to take into consideration the price agreed to by the parties, and such other evidence as there was in the case.—See Sedgwick on Meas. of Dam. 191.

In Pinkston v. Huie, 9 Ala. 252, although the court avoided expressing an opinion on the general question raised here, it was decided that the proper measure of damages upon a bond, conditioned that a *third person* shall convey a title to land, is the value of the land when the title was to be conveyed, with interest on that value to the time of trial.

My own opinion is, that the instructions given were correct, but I conceive it is unnecessary for this court to express an opinion on this point, because if the court erred, as insisted on, the error resulted to the benefit of the defendant. It appears from the record (which purports to disclose all the testimony in the case) that the plaintiff recovered a smaller amount of damages than he would have been entitled to under the rule insisted on by the defendant.

The judgment of the court below is affirmed.