Andrus v. Blazzard et al.

JAMES ANDRUS, Appellant, v. JOHN BLAZZARD, JOSEPH H. HURD, et al., Respondents.

CONTRACT—BY GUARDIAN—PERSONAL LIABILITY—POWER OF GUARDIAN—
    POWER OF PROBATE COURTS—TO BIND ESTATES OF INCOMPETENTS—
    POWER OF GUARDIAN TO MORTGAGE—SEC. 4007, R. S., 1898—DUTIES
    OF GUARDIAN—SALES OF REAL ESTATE—SECS. 4008 AND 4015, R. S.
    1898—EXPENSES AND COMPENSATION OF GUARDIAN—ACCOUNTING—
    SECS. 4013, AND 4014, R. S. 1898—PERSONAL LIABILITY OF GUAR-
    DIAN—ON MORTGAGE TO PAY DEBTS—CONTRACT—MISTAKE AS TO LE-
    GAL EFFECT OF LANGUAGE USED—NO GROUND FOR REFORMATION—
    PAROL EVIDENCE—WHEN NOT ADMISSIBLE—PROBATE ORDERS—WHEN
    VOID—EVIDENCE—IN ACTION BY SUBSEQUENT HOLDER OF NOTE FOR
    VALUE—WHEN NOT ADMISSIBLE.

1.  CONTRACT: BY GUARDIAN: PERSONAL LIABILITY.  A guardian has no power to make a contract binding upon the ward or upon his estate, however beneficial to the ward the contract may be; and such contracts made by him impose a personal liability upon himself, and his protection from loss lies in his right to charge the expenditures to the ward's estate in his account.

2.  POWER OF GUARDIAN: POWER OF PROBATE COURTS: TO BIND ESTATES OF INCOMPETENTS.  Neither guardians or the courts having jurisdic-

Andrus v. Blazzard et al.

tion over the estates of incompetent persons, have power to bind the person or estate of such persons, unless expressly authorized to do so by law.

3. POWER OF GUARDIAN TO MORTGAGE: SECTION 4007, REVISED STATUTES 1898. Under the provisions of section 4007, Revised Statutes 1898, a guardian may only mortgage the real estate of his ward when necessary to provide for the suitable maintenance of the ward and his family.

4. DUTIES OF GUARDIAN: SALES OF REAL ESTATE: SECTIONS 4008 AND 4015, REVISED STATUTES 1898. Section 4008, Revised Statutes 1898, makes it the duty of a guardian to pay all just debts of the ward out of his personal estate and the income of his real estate if sufficient, if not, then out of his real estate, and section 4015, Revised Statutes 1898, provides that when a sale of the property of the ward is necessary to pay the debts and expenses of guardianship, the guardian may sell upon the order of the court the ward's real estate for that purpose.

5. EXPENSES AND COMPENSATION OF GUARDIAN: ACCOUNTING: SECTIONS 4013 AND 4014, REVISED STATUTES 1898. Sections 4013 and 4014, Revised Statutes 1898, provide for the expenses and compensation of the guardian and for the allowance of such items in his account.

6. PERSONAL LIABILITY OF GUARDIAN: ON MORTGAGE TO PAY DEBTS. Nowhere in the statutes is there a provision allowing the guardian to mortgage the real property of his ward for the purpose of paying debts, and the guardian who so acts binds himself and not the ward.

7. CONTRACT: MISTAKE AS TO LEGAL EFFECT OF LANGUAGE USED: NO GROUND FOR REFORMATION. When the facts are within the knowledge of both parties to a written contract, and the language used is such as they intended, a mistake as to the legal effect of the contract or that its legal effect is different from that intended, is not available as a defense at law, and is not ground for a reformation of the contract in a court of equity, and can not be shown by parol.

8. PAROL EVIDENCE: WHEN NOT ADMISSIBLE. Inasmuch as the terms of the note in question were such as the parties intended to use, and their legal effect was to bind the guardian personally, parol evidence showing a different understanding was inadmissible.

9. PROBATE ORDERS: WHEN VOID. An order of a probate court, made without authority of the statute, is void.

10. EVIDENCE: IN ACTION BY SUBSEQUENT HOLDER OF NOTE FOR VALUE: WHAT NOT ADMISSIBLE. Inasmuch as parol evidence is not admissible to defeat the legal effect of a written contract the terms of which are such as the parties intended to use, such evidence, if the beneficiaries of the note in question had brought suit thereon, would not have been admissible over their objection, and is therefore not admissible in a suit by any subsequent owner and holder thereof for value.

Decided February 4, 1901.

Appeal from the Third District Court Salt Lake County.— *Hon. Ogden Hiles,* Judge.

Action on a promissory note in which it was sought to bind one H. personally, H. having signed the note as general guardian for an incompetent. From a judgment holding that H. was not personally responsible and dismissing the complaint plaintiff appealed.

REVERSED.

*H. J. Dininny, Esq.,* for appellant.

A note executed by an administrator under an order of the probate court, which order is void, makes the administrator personally liable. He can not shield himself under a void order. When he undertakes to bind the estate and fails to do so for want of authority, he binds himself personally, and may be sued upon his contract individually, and in such case it avails him nothing that he intended only to bind himself in his representative capacity. McCalley v. Wilburn, 77 Ala. Rep. 549, 552; Whiteside v. Jennings, 19 Ala. Rep. 784.

Neither a guardian or trustee can bind any one but himself by a note signed by himself as guardian or trustee for an-

Andrus v. Blazzard et al.

other unless he provides in the note that it is payable out of the estate which he represents. He is not an agent, and the rule of law as to agents does not apply. Norton on Bills and Notes, p. 67; Daniel on Negotiable Insts., sec. 271, 4th Ed.; Randolph on Com'l Paper, vol. 1, sec. 134, 443; Parson on Bills and Notes, vol. 1, pp. 89-90; Bank v. Mfg. Co., 17 Atl. Rep. 170; Tayler v. Davis, 110 U. S. 333, 334, 335; Thatcher v. Dinsmore, 5 Mass. 299, 4 Am. Dec. 61; Foster v. Fuller, 6 Mass. 58, 4 Am. Dec. 87; Fessenden v. Jones, 75 Am. Dec. 445, 450; Rollins v. Marsh, 128 Mass. Rep. 116-118; Patterson v. Craig, 1 Baxter (Tenn.) 291-293; Steele v. McElroy, 1 Smead (Tenn.) 341; Hodson v. Dexter, 1 Cranch (U. S.) 345; Ry. Co. v. Wright, 49 Pac. Rep. 975, 976; Hospital v. Fairbanks, 132 Mass. Rep. 414; Wallace v. Bardwell, 126 Mass. Rep. 366; Pool v. Wilkinson, 42 Ga. Rep. 539; Hunt v. Maldonado, 89 Cal. Rep. 636; Kingsbury v. Powers, 131 Ill. Rep. 182, 22 N. E. Rep. 479; Reading v. Wilson, 38 N. J. Eq. Rep. 446; Wordeward Case, 38 Pa. St. Rep. 322.

Trustees acting under the provisions of a will making it their duty to endorse notes, who endorse without stipulating in it that the estate they represent shall be liable, are personally liable. This is the rule even when the holder of the note knew of the will, and that the trustees were acting according to its provisions. Bank v. Mfg. Co., 17 Atl. Rep. 170, 171; Lucas v. Williams, 3 Griff. Rep. 150; Laeble v. Ferry, 32 N. J. Eq. 791; Wild v. Davenport, 48 N. J. Law, 129; New v. Nicol, 73 N. Y. Rep. 127; Ex parte Gardner, 10 Ves. Jr. 110; Owen v. Delemere, L. R. 15 Eq. 134.

Parol evidence can not be introduced to vary the clear and settled legal effect and meaning of a contract. Brandon v. Morse, 48 Vt. Rep. 322; Bryan v. Duff, 12 Wash. Rep. 333; 50 Am. St. Rep. 889 and notes; Fawker v. Smith, 88 Iowa 169; 45 Am. St. 231, 232; Frink v. Rowe, 70 Cal. 296,

316; Ruiz v. Norton, 4 Cal. 355; Gowell v. Ins. Co., 63 Fed. 371-377; Romer v. Bank, 9 Wheat 581-587; Martin v. Cole, 104 U. S. 30, 38; Brown v. Worley, 20 How. (U. S.) 442, 447, 448; Preston v. Hixon, 53 N. E. Rep. 391; Lansford v. Malsby, 28 S. E. 496; Bank v. Stone, 59 Cal. 183; Hays v. Machews, 63 Ind. 412; Durland v. Pitcairn, 51 Ind. 426.

Parol evidence can not be introduced to contradict or vary whatever the law implies from the contract. Bryan v. Duff, 12 Wash. Rep. 333; Fawker v. Smith, 88 Iowa 169.

Parol evidence of an understanding that a note signed by a person as executor was to be paid out of the estate, is not admissible. Kessler v. Hall, 64 N. C. Rep. 60.

Parol evidence that a note, absolute on its face, and made by the maker as guardian for another, is not admissible to show that it was only to be paid in the event that the assets of the ward were sufficient. Wren v. Hoffman, 41 Miss. Rep. 61.

When there is no ambiguity, the liabilities of the parties must be settled from an inspection of the note. Bank v. Market Co., 54 Pac. Rep. 273 (Cal.).

If there is any condition to the note, it must appear on its face. A condition in a mortgage given to secure a note will not affect the note. Randolph on Com'l Paper, vol. 1, sec. 95, 2nd Ed.

Parol evidence is not admissible to vary or contradict the terms of a written instrument. Bank v. Foot, 12 Utah 156, 157; Wallace v. Richards, 16 Utah, 52, 50 Pac. 804; Moyle v. Church, 16 Utah 69, 50 Pac. 806-808; Milch v. Armour, 56 Pac. 1; Connors v. Clark, 12 Cal. 168; Leonard v. Miner, 52 Pac. 655 (Cal.); Robinson v. Bank, 8 N. E. 583; Hypes v. Griffin, 31 Am. Rep. 71 (Ill.); Randell v. Huntington, 46 Am. 421 (Me.); Haskins v. Durn, 56 Pac. 953, 954 (Utah); Edgar v. Golden, 60 Pac. 2; Forsythe v. Kimball, 91 U. S. 291; Brown v. Spofford, 95 U. S. 508.

This rule applies in favor of parties, their privies, representatives, and all claiming under them. Moyle v. Church (supra), and cases there cited.

Parol evidence that the payee in the note told the maker at the time of signing, that he should not be called upon to pay it, is not admissible. Wright v. Remington, 41 N. J. L. 48, 54; 32 Am. St. Rep. 180; Remington v. Wright, 43 N. J. L. 451.

Or that it was understood that the maker of a note was not to be liable. Leonard v. Miner, 120 Cal. 403, cases 406 52 Pac. 655; Davis v. England, 141 Mass. 587; Tocoma v. Sherwood, 11 Wash. 493, 39 Pac. 977; Woods Co. v. Schaefer, 53 N. E. 881 (Mass.); Hall v. Bank, 53 N. E. 154 (Mass.); Davey v. Kelly, 66 Wis. 452; Dolson v. DeGavahl, 70 Tex. 620; Sturdevant v. Hull, 59 Me. 172; Connor v. Clark, 12 Cal. 168; Randolph on Com'l Paper, vol. 3, sec. 1901, 2nd Ed.

Can not add a stipulation, or take one from a contract already complete in all its parts. Fawkner v. Paper Co., 88 Iowa 169; 49 Am. St. Rep. 230; Harrison v. McCornick, 89 Cal. 327, 23 Am. St. Rep. 469; Gilbert v. Stockman, 76 Wis. 62, 20 Am. St. Rep. 23; Conant v. Banks, 121 Ind. 323, 21 N. E. 250.

The appellant claims that the evidence shows that McGurrin was a bona fide holder and purchaser of the note in suit. If this is true, then even if plaintiff purchased it after maturity, he holds it free from all defenses. Vol. 2, Randolph on Commercial Paper, sec. 987 and cases; Knight v. Kenney, 50 N. W. 912; Koehler v. Dodge, 31 Neb. 328.

The purchaser of a negotiable instrument before due, in the usual course of business, for a valuable consideration, is entitled to recover on it though he took it under circumstances that ought to have excited suspicion in the mind of a prudent and reasonable person, unless such circumstances show that he

acted in bad faith or with want of honesty.   Kichen v. Loud-
beck, 48 Ohio St. 177, 29 Am. St. 540; Bank v. Morgan, 165
Pa. 199, 44 Am. St. 652; Richards v. Monroe, 85 Ia. 359, 39
Am. St. 305; Rosemond v. Graham, 54 Minn. 323, 40 Am.
St. 336; Jennings v. Todd, 118 Mo. 296, 40 Am. St. 373.

When a party signs the contract he intended to sign with-
out any mistake as to the facts, but in law incurs a greater lia-
bility than he expected to incur, or there was represented to
exist, he is bound by the contract.   Fish v. Cleveland, 33 Ill.
238; Mears v. Graham, 8 Blachf. 144 (Ind.); Martin v. Whar-
ton, 38 Ala. 637; Upton v. Trebelcock, 91 U. S. 45.

If the consideration of the note moves to any of the parties
to it, it is sufficient to charge the other makers.   Bank v. Foot,
12 Utah 157-167; Wright v. McKendrick, 43 Pac. 977; Bow-
ling v. Floyd, 48 Pac. 875; 56 Am. St. Rep. 480, note.

*Messrs. Bennett, Harkness, Howat, Sutherland & Van
Cott,* for respondents.

The rule of law is well settled that an agent or trustee
can not be held upon a contract which he assumes to execute
for another, unless there are apt words of personal obligation
on the part of such agent or trustee in said contract.   Hall v.
Crandall, 29 Cal. 567; Lander v. Castro, 43 Cal. 497; John-
son v. Smith, 21 Conn. 627; Mechem on Agency, sec. 550, and
cases cited under next point.

It is not true that some body must be bound by the note.
This note fails to bind the ward for want of authority upon
the part of the guardian to execute it, and it fails to bind the
guardian not only for the reason that it does not contain words
of personal obligation, but also because the payee, with a knowl-
edge of all the facts, relied on the power of the guardian to
make a binding contract for his ward, and the mistake was one
of law.

Counsel upon the other side insist that somebody must be bound by the contract, that if the ward is not, the guardian must be, because otherwise no person could be charged. There are some loose expressions in the text books which seem to bear out this claim, but an examination of the authorities will show that it is without foundation.   Mechem on Agency, sec. 550; 1 Am. & Eng. Ency. of Law (2 Ed.), 1127; Michael v. Jones, 84 Mo. 578, and other cases cited, supra.

There was no concealment of any fact upon the part of the guardian.   All the parties to this transaction stood upon an equality, so far as the facts were concerned.   A petition was presented to the Probate court asking that the guardian be authorized and directed to execute the note and mortgage as and for the act of John Blazzard.   The Probate court, under a misapprehension of the law, granted the order; evidently under a misapprehension of the law, the guardian signed the note, and, under the same misapprehension, it was taken by Mc-Gurrin and those for whose benefit it was made.   Under such circumstances the authorities are uniformly to the effect that the guardian is not bound.   Cement Co. v. Jones, 8 Mo. App. 373; Michael v. Jones, 84 Mo. 578; Humphrey v. Jones, 71 Mo. 62; 1 Am. and Eng. Ency. of Law, 1127; Johnson v. Smith, 21 Conn. 627; Taylor v. Shelton, 30 Conn. 122; Ogden v. Raymond, 22 Conn. 379; Mechem on Agency, sec. 546; Barnum v. Frost, 17 Gratt. 398.

It was competent to introduce parol testimony, not for the purpose of varying the terms of the instrument, but to show who was bound thereby.   Mechem on Agency, secs. 441, *et seq.;* 1 Randolph Com'l Paper, sec. 147; Metcalf v. Williams, 104 U. S. 93; Mechanics' Bank v. Bank of Columbia, 5 Wheat. p. 326; Kean v. Davis, 21 N. J. L. 683.

Parol evidence is admissible to explain an ambiguity. Am.

and Eng. Ency. of Law (2 Ed.), 289-294; Mechem on Agency, p. 288; 1 Randolph on Com'l Paper, sec. 147.

Acts done upon the faith of the instrument are admissible as showing a practical construction by the parties. 2 Am. and Eng. Ency. of Law (2 Ed.), 293.

Verbal declarations made at the time of the execution of the instrument, showing the intention of the parties, are also admissible.

BASKIN, J.—It appears that a promissory note, at the date thereof was made in the following manner and form to-wit:

"Salt Lake City, Utah, Aug. 19, 1893.

"Two years after date, we jointly and severally promise to pay Frank E. McGurrin, or order, at McCornick and Co's. Banking House in Salt Lake City, eleven hundred and fifty-four dollars, with interest thereon at the rate of eight per cent per annum, payable quarterly at the said bank, for value received. If the interest be not paid as stipulated the legal holder of this note may declare the principal due and proceed by law to recover both principal and interest.

"JAMES BLAZZARD,

"By EDWARD B. CRITCHLOW, his attorney in fact.

"THOMAS BLAZZARD,

"By J. L. RAWLINS, his attorney in fact.

"JOHN BLAZZARD,

"By JOSEPH H. HURD, his general guardian.

"MARIAM BLAZZARD STEERS."

On the same date a mortgage on certain real estate was made and signed in the same manner as said note, to secure the payment of the same. This note and mortgage was, after the

maturity of the note assigned to plaintiff. The amended complaint contained three counts. The first was based upon the note and mortgage, and prayed that the mortgage be adjudged to be a valid and subsisting lien upon the interest of the said John Blazzard in the premises mortgaged, and that the same be sold to satisfy the plaintiff's debt, interest, costs, and attorneys' fees.

The second was on the note alone and sought to charge the said John Blazzard and Joseph H. Hurd, personally thereon, and the third was on the note alone and sought to charge the said Joseph H. Hurd, personally thereon as one of the several obligees thereof.

On motion of the said Joseph H. Hurd, the first and second counts were stricken out, on the ground that the ward was not bound by either the note or mortgage. Thereupon the said Joseph H. Hurd answered the third count, and among other matters alleged that "For a further and separate answer and defense defendant alleges, that on or about the nineteenth day of August, 1893, the Probate court of Salt Lake county, Utah Territory, duly made an order in the matter of the estate and guardianship of John Blazzard, an incompetent person, authorizing, ordering and directing this defendant in the name and for the act and deed of the said John Blazzard to execute said note; and to secure the payment of the same, likewise, in the name and as and for the act and deed of the said John Blazzard, to secure said mortgage upon his undivided five twenty-eighths interest of, in and to the real estate described in the mortgage; that in obedience to the said order of the said Probate court, and not otherwise, this defendant signed to the said note and to the said mortgage the name of the said John Blazzard by himself as general guardian, upon the express and distinct understanding and agreement however, that this defendant should not thereby be or become personally obligated or bound

in any manner whatsoever by reason thereof, but that the same should, if legally sufficient and competent therefor, bind the estate of the said John Blazzard and nothing more, which said understanding and agreement was then and there expressly brought to the attention of and assented to by the said McGurrin, and was also well known to and perfectly understood by the plaintiff, at the time of the assignment of said note to him as alleged in the complaint.

"Defendants further allege that neither the said principal sum of $1154, nor any part thereof, was ever paid to or received by this defendant, or the said John Blazzard, and that the said note and mortgage were directed by the said court to be given in the manner and form aforesaid for the purpose of paying the attorney's fees incurred by Mariam Blazzard Steers as guardian ad litem of the said John Blazzard, in the prosecution of certain litigation in behalf of herself and others."

It appears from the evidence that previous to the execution of the said note the said James Blazzard, Thomas Blazzard, John Blazzard and Mariam Blazzard Steers were parties to five cases pending in the Third District Court of the Territory of Utah, and which were consolidated into one, in which was involved their titles to a certain estate; that in pursuance of the mandate of the Supreme Court of the Territory, the said district court awarded to each of the makers of said note, and other parties to the action certain interests in the real estate involved and ordered conveyances to be made in accordance with the decree, and that the said James Blazzard, Thomas Blazzard, John Blazzard and Mariam Blazzard Steers, who were plaintiffs and intervenors in said actions, pay to the defendants therein, $8,500; that the defendant in the pending case, Joseph Hurd, as the general guardian of the said John Blazzard, on the same day that said note was executed, filed in the probate court of Salt Lake county, a petition setting out the foregoing

facts, and in addition thereto the following, to-wit: "That neither the plaintiffs or intervenors have any estate or money other than the land decreed to them, and except as hereinafter stated are unable to comply with the decree requiring them to pay the money aforesaid. That $1,000 which has been in the hands of the receiver had been paid. That it is necessary to raise by mortgage the sum of $7,500 to comply with said decree. That in addition the sum of $2,325.88 is required to pay Messrs. Rawlins & Critchlow and C. S. Varian, attorneys and counsel for plaintiffs, being the balance due them of the sum agreed by plaintiffs (John Blazzard by his guardian ad litem agreeing) to be paid; that the services of said counsel were contingent, of great value and resulted in securing the property in lot six aforesaid, and that the compensation agreed upon was and is reasonable; that said property is not worth less than $40,000. That plaintiffs and intervenors have now an opportunity to procure a loan upon a mortgage on said property for the purposes aforesaid. That the amounts necessary to be raised, as estimated, are as follows:

On the whole property .............. $7,500 00
Commissions ......................   200 00
Expenses of examining title ..........   100 00
On five-sevenths interest of plaintiff.... 2,325 88

That all the parties in interest are now ready to complete the loans and perfect the title, and the deeds can not be exchanged nor the decree against the plaintiffs and lot six satisfied, until your petitioner is authorized with power in behalf of John Blazzard."

That on the same day said probate court made and entered the following order: "Now therefore, it is ordered, adjudged and decreed, that Joseph H. Hurd, guardian of the person and estate of John Blazzard, a person of unsound mind, be, and is hereby authorized as guardian aforesaid and for

John Blazzard, to execute with the plaintiffs and intervenors aforesaid, a note or notes, and a mortgage or mortgages, of the premises in lot 6, block 69, hereinbefore described, to procure a loan or loans sufficient to pay the sums hereinbefore mentioned, upon such terms and for such time as may be reasonable, and to execute the conveyances hereinbefore and in said decree mentioned. And it is further ordered that the said guardian report his acts and doings in the premises to this court."

On the same day the aforesaid note and the mortgage on said lot were executed. While the said McGurrin was named as the mortgagee and payee of the note it is admitted that the real beneficiaries were Joseph L. Rawlins, E. B. Crichlow and C. S. Varian, the attorneys of the said James Blazzard, Thomas Blazzard, John Blazzard, and Mariam Blazzard Steers, in the cases before mentioned, and the consideration of the note and mortgage was their services as such in said cases, and that the note and mortgage were made to the said McGurrin as their trustee, and for their accommodation; that afterwards, and before the maturity of the note, the said McGurrin paid to said attorneys the full amount of said note and became the legal holder and owner thereof, and that he for a good and valuable consideration subsequently and after maturity of the note transferred the same and also the mortgage to the plaintiff.

In addition to the above facts the trial court found that at and before the time the said McGurrin purchased and became the owner of said note he understood that the said Hurd was not to be bound personally upon said note; and that the said Hurd, in obedience to said order of the probate court, and not otherwise, signed said note and mortgage with the name of John Blazzard, an incompetent person by himself as general guardian.

The principal question raised by the assignments of error is, whether the defendant, Joseph H. Hurd, is personally liable to the plaintiff on said promissory note. The court below held that he was not and dismissed the complaint.

It is stated in the 15th Am. and Eng. Ency. of Law, (2 Ed.), 70, that "The prevailing doctrine is that a guardian has no power to make a contract binding upon the ward or upon his estate, however proper and beneficial the contract may be; but that contracts made by him impose a personal liability upon himself, and his protection from loss lies in his right to charge the expenditures to the ward's estate in his account."

This text is supported by a very large number of well considered cases. Thacher v. Dinsmore, 5 Mass. 299; Forster v. Fuller, 6 Mass. 58; Rollins v. Marsh, 128 Mass. 116; Wells et al. v. Barnwell et al., 126 Mass. 366; Phelps v. Worcester, 11 N. H. 51; Hardy v. Citizens' Nat. Bank, 61 N. H. 34-39; Turner v. Flagg, 6 Ind. App. 563; Fessenden v. Jones, 52 N. C. 14 (7 Jones Law); Hunt v. Maldonado, 89 Cal. 636; St. Joseph's Acad. v. Augustini, 55 Ala. 493, 495; Kingsbury v. Powers, 131 Ill. 182.

The case of Thacher v. Dinsmore, supra, arose on the following agreed statement of facts: "The defendant, as guardian of A. L. signed the notes declared on in the first two counts, for just debts due from the said A. L. to the plaintiffs. At the time of signing them the defendant was guardian of the said A. L., an insane person, having been duly appointed to that office. After the notes were respectively payable, and before the commencement of this action, the defendant showing to the judge of probate that the said A. L. had recovered his reason, and was of sane mind, the judge duly discharged him from said office of guardian."

In the opinion, which was delivered by Chief Justice Parsons, it is said: "The question to be decided on the facts agreed

in this case is, whether the defendant is liable in this action. If any action is maintainable against any person, it must be the defendant, for the guardian of an insane person can not make his ward liable to an action as on his own contract, by any promise which the guardian can make. * * * * The defendant's description of himself in the notes as guardian can not vary the form of the action; but it is for his own benefit, that on payment of the notes, he may not be precluded from charging the monies paid to the account of his ward."

This case is cited and followed in the foregoing cases and in many others not mentioned.

Neither guardians, nor the courts having jurisdiction over the estates of incompetent persons, have power to bind the person or estate of such persons, unless expressly authorized to do so by law. In this state the duties and powers of guardians of incompetent persons are fixed and limited by statutory provisions, as also the duties and powers of the courts.

Section 4007 Revised Statutes, provides that in case the income of the ward's estate is insufficient for the comfortable and suitable maintenance and support of the ward and his family, the guardian may sell, mortgage, or lease the real estate, upon obtaining an order of court therefor.

Section 4008 makes it the duty of the guardian to pay all just debts of the ward out of his personal estate and the income of his real estate if sufficient, if not, then out of his real estate, and section 4015 provides that when a sale of the property of the ward is necessary to pay the debts and expenses of guardianship the guardian may do so upon the order of the court.

Section 4014 provides that every guardian must be allowed the amount of his reasonable expenses incurred in the execution of his trust, and he must also have such compensation for his services as the court in which his accounts are settled deems just and reasonable.

Section 4013 provides for the allowance, in the guardian's settlement, for advancements made by him for the support or education of his ward.

There is no provision in the statute authorizing the court to order the guardian to bind either the said John Blazzard personally, or his estate by the note or mortgage in question. It was the duty of the defendant Hurd, as guardian, to pay the just debts of his ward out of the latter's estate in the manner prescribed by the statute, and when he chose to do so in a different way than that prescribed by statute and liquidated his ward's debt by the execution, as guardian, of a note and mortgage, under an unauthorized and void order of the court procured at his instance, he, in the absence of any other controlling circumstance bound himself as principal, and must look for reimbursement in the settlement of his accounts, as guardian, in the court which appointed him as such.

From the nature of the relations of guardian and ward the defendant Hurd could not be the agent of his ward, or act in any other capacity than principal in making said note, because the foundation of an agency is the delegation by the principal of authority to the agent to act, and as the ward was an incompetent person he could not delegate any authority to his guardian to bind him personally by any contract. Nor could the court, under the provisions of the statute, authorize, either the execution of a note or mortgage by the guardian in payment of the ward's debt.

In the case of Brown v. Eggleston, 53 Conn. 110, 119, the court said: "It has been repeatedly decided in Massachusetts that a guardian has no power to bind the ward or his estate by his contract. Thacher v. Dinsmore, 5 Mass. 299; Forster v. Fuller, 6 Id. 58; Wallis v. Bardwell, 126 Id. 366. Administrators and guardians in this respect are closely analogous to conservators. The powers and duties of a conservator are de-

fined in a general way by statute. He 'shall have charge of the person and estate of such incapable person;' the conservator shall manage all the estate of his ward, and apply the net income thereof, and, if necessary, any part of the personal estate, to support him and his family and to pay his debts and may sue for and collect all debts due to him.' The statute neither expressly nor impliedly authorizes the conservator to make contracts in the name of the ward, and the ward is legally incapable of making a contract. A conservator, unlike an overseer, acts independently of his ward, and in all his transactions he alone is the responsible party. He is not however bound to contract debts and pay them from his own estate. The law places in his hands ample means for supplying himself with funds to meet all his obligations. If he suffers loss personally it must be through his own neglect. Sabrina Main being in fact and in law incapable of making a contract when the services were rendered, it is difficult to conceive how she or her estate can be held liable *ex contractu.*"

In the case of St. Joseph's Academy v. Augustini, supra, the court quotes with approval the following from Sanford v. Howard, 29 Ala. 694: "The purchases of trustees, including executors, administrators, and guardians, when made in obedience to the duties of the trust impose upon them a personal liability. The seller, 'or, we may insert, the person to whom a debt is contracted,' must look to them for payment, and they must look to the trust estate for reimbursement. 'This is everywhere, in this country, as well as in England, held to be the law; and appellant's counsel admit it.'"

In Hardy v. The Bank, supra, the court said: "In Thacher v. Dinsmore, 5 Mass. 299, it is held that a guardian signing a note as guardian can not bind the estate of the ward. This doctrine was approved in Forster v. Fuller, 6 Mass. 58, the court there saying that although the note states that he

promises as guardian, yet he is personally bound.    To the same
effect are Tenney v. Evans, 14 N. H. 343; Jones v. Brewer,
1 Pick. 314; Barnaby v. Barnaby, 1 Pick. 221; Bicknell v.
Bicknell, 111 Mass. 266; Thompson v. Boardman, 1 Vt. 367;
Dan. Neg. Ins. sec. 271; Sch. Dom. Rel. 464; 1 Par. Cont.
136.   In Phelps v. Worcester, 11 N. H. 51, 53, the court says:
'The rule that the guardian, when he undertakes to act for the
ward in contracts with others, should alone be liable, is sus-
tained by the soundest reason.   A different rule would subject
the ward to numerous suits, the merits of which might be wholly
unknown to him.   In all expenditures arising under such con-
tracts, the ward should be liable only to his guardian.   He is
then answerable to but one individual, and then only on a de-
cree of court, on settlement of his guardianship account.' "

In Sperry v. Fanning et al., 80 Ill. 375, the court quotes
with approval the following from 1 Parsons on Contracts, 136:
"A guardian can not, by his own contract, bind the person or
estate of his ward; but if he promise, on sufficient considera-
tion, to pay the debt of his ward, he is personally bound by
his promise, although he expressly promises as guardian.   And
it is a sufficient consideration, if such promise discharges the
debt of the ward; and a guardian who thus discharges the debt
of his ward, may lawfully indemnify himself out of the ward's
estate."

In the case of Fessenden v. Jones, 56 N. C. 14, the court
said:   "The guardian is charged with the duty of controlling
and managing the person and property of the ward, and judg-
ing of the expenditures which may be needful for either, and
he also is informed of the condition of the ward's resources.
Hence, the contract should be made with the guardian, and
hence, the guardian ought to be looked to for payment.   To
allow a departure from the above rule, would, in the first place,
have the effect to encourage in the youth of the country appeals

from the judgments of their guardians, and, in the next, make the right to compensation on the part of the creditor depend upon a condition of things, of which he had no means to judge, and, therefore, uncertain and precarious.   * * *   It will be seen from the foregoing considerations, a guardian is not in the condition of an ordinary agent or factor, and therefore, the same legal relations, in all respects, do not subsist between them and those whom they respectively represent.   The former represents one who has no legal capacity to contract for himself; the latter, one who is fully able to contract and bind, were he present.   The former is substituted by the law, and stands *in loco parentis*.   The latter is the appointee of his principal, and that principal can, at any moment, abrogate or modify his power.   This want of analogies between the two, in the sources and limits of their powers, makes it obvious, there can be no complete analogy between them as to liabilities or exemptions."

In Hunt v. Maldonado, supra, the court said:   "The action is to recover an attorney's fee for services rendered to the guardian of a minor in pursuance of a written contract.   The action is against the minor.   If the guardian made a valid contract with the attorney, he may be held liable, and if he pays it, and the probate court shall deem the expenditure reasona· ble, and necessary to protect the interests of the ward, it may, be allowed from the ward's estate.   But it is an expense incurred by the guardian in the performance of his duties, for which he is primarily liable."

This language is quoted with approval in Morse v. Hinkley, 124 Cal. 158.

In the case at bar a just indebtedness of the ward to the attorneys heretofore mentioned has been paid, and it was the duty of the guardian to pay the same from the estate of his ward.   He performed this duty by executing the note in

question as guardian, and notwithstanding the form of the note, on the face of the same, and according to its legal effect, we think it is clear, under the authorities, that the guardian is personally bound and must look to the estate of his ward in his settlement with the court for reimbursement. The court below in the opinion rendered, and which appears in the record, evidently entertained the view that the note, unexplained by parol evidence, bound personally the guardian. In that opinion, the trial judge said: "I think the words of the note sufficiently show that he signed as guardian, although he signed the name of John Blazzard by Joseph H. Hurd, guardian. I think it would charge him under the rule with personal liability if in the hands of an innocent indorsee."

Respondent's counsel, in their brief, state that it "may be admitted that ordinarily a guardian who makes a contract as guardian, binds himself and not his ward."

In the case at bar Hurd acted in the capacity of guardian as the way in which he signed the note shows. The ward being civilly dead, the execution of the note was the act of the guardian, and the note his own and not the ward's.

It is, however, claimed by counsel for respondents that notwithstanding a guardian, who makes a contract as such, thereby binds himself and not his ward, that still the guardian may show by parol evidence, as was permitted by the court, over the objection of the plaintiff, to be done in this case, that the parties did not intend to bind the guardian personally. No parol agreement, in expressed terms was made, that the guardian should not be personally bound. The only evidence upon that subject was the statements of the guardian and C. S. Varian and E. B. Critchlow, two of the beneficiaries.

The guardian, in answer to the question, "What occurred at the time the note was made," said: "My recollection is not as clear as it might be, but as I remember it the papers

were all prepared—a petition to the court for authority to execute this note and mortgage—authorizing and directing the execution of the note on account of the incompetent and the signing and waiver of notice, that the court having heard the testimony made the order. My recollection is that the other papers were prepared at the same time and I signed them. I remember distinctly Mr. Varian calling my attention to the manner in which it was necessary to sign in order to avoid personal liability in a matter of this kind, and suggested that it be signed in the way it is."

In the examination, on this matter of C. S. Varian, the following occurred:

"Q. Now I will ask you in taking that note of Mr. Hurd, whether you understood that he was not to be bound personally upon it? A. I certainly did. Q. I will ask you if there was any intention on your part to bind anybody except the person and the estate of this incompetent person, by his signature to this note? A. There was not; Hurd was an entirely independent person acting gratuitously as an act of courtesy. Q. In taking the note from Mr. Hurd signed in this way did you or did you not depend entirely upon the order of the probate court? A. Certainly."

In the examination of Mr. E. B. Critchlow, he stated: "Q. I will ask you whether or not in taking the note you yourself understood that Mr. Hurd was in no manner personally responsible? A. I certainly did. Q. I will ask you to state whether or not Mr. Hurd was procured to act as guardian at the request of yourself, Mr. Rawlins and Mr. Varian, who were interested in the note. A. He was; he had absolutely no interest in the matter at all until he was asked to come into it at our request to act as guardian for the incompetent person. Q. State whether or not he was asked to act as attorney as guardian simply for your accommodation? A.

I can hardly say that, I suppose the interest of the incompetent needed attention, and he was appointed in his interest as well. As to the execution of the note he was acting in our interest entirely, it was for our accommodation. Q. One further question I will ask you, whether or not it was understood by you that the order of the probate court did bind the estate of this incompetent person? A. That was a matter of investigation by Mr. Varian and myself. I can't say whether Mr. Rawlins participated in that or not, and we came to the conclusion, formed the judgment that the guardian of an incompetent person might be authorized by the court, upon proper proceedings taken to give this note and mortgage, and upon that it was our intention to bind the estate of the ward and nobody else by the signature of Mr. Hurd."

The guardian and beneficiaries of said note were fully aware of all the facts regarding the transaction; there was no mistake respecting the language of the note, but it was in the form and was executed in the manner intended. It is not claimed that there was any fraud or mistake of fact in the transaction. The substance of respondent's claim is that he and the beneficiaries did not intend the note in legal effect should bind the guardian personally.

When the facts are within the knowledge of both parties to a written contract, and the language used is such as they intended, a mistake as to the legal effect of the contract or that its legal effect is different from that intended, is not available as a defense at law, and is not ground for a reformation of the contract in a court of equity, and can not be shown by parol. Brown v. Worley, 20 How. 442; Martin v. Cole, 104 U. S. 30-38; Fawkner v. Smith Wall Paper Co., 88 Ia. 169; Bryan v. Duff, 50 Am. Rep. 889; McAninch v. Laughlin, 13 Pa. St. 371; Davis v. England, 141 Mass. 587-590; Oiler et al. v. Gard et al., 23 Ind. 212-218; Kelly v. Turner, 74

Ala. 513; Farley v. Bryant, 32 Me. 474-483; Conner v. Clark, 12 Cal. 168; Renner v. Bank of Columbia, 5 Wheat. 581-587; Moorman v. Collier, 32 Ia. 138.

There are many other decisions in line with the foregoing cases but they are too numerous for citation.

In the case of Brown v. Worley, supra, Justice GRIER used this language: "When the operation of a contract is clearly settled by general principles of law, it is taken to be the true sense of the contracting parties. This is not only a positive rule of the common law, but it is a general principle in the construction of contracts. Some precedents to the contrary may be found in some of our States, originating in hard cases; but they are generally overruled by the same tribunals from which they emanated, on experience of the evil consequences flowing from a relaxation of the rule."

In the case of Renner v. Bank of Columbia, supra, the court said: "There is no rule of law better settled, or more salutary in its application to contracts, than that which precludes the admission of parol evidence, to contradict or substantially vary the legal import of a written agreement."

In the case of Moorman et al. v. Collier, supra, the legal effect of the terms of a contract was different from what the parties supposed they were, and parol evidence of the mistake was excluded.

In the case of Fawkner v. Smith Wall Paper Co., 88 Ia. 169, it was held that "whatever the law implies from the language used in a written contract is as much a part of the contract as that which is expressed therein; and if the contract, viewed in the light of what the law thus implies, is clear, definite and complete, it can not be added to, varied or contradicted by extrinsic evidence."

In the case of Farley v. Bryant, 32 Me. 483, the court said: "When it is alleged that certain words, letters or figures

have been inserted or omitted by mistake, the proof should establish the facts alleged.    If there be a failure to do this, and the testimony shows, that by a legal construction, the deed may operate contrary to the expectations of the grantor and convey land, which he did not intend to convey, a court of equity would not be authorized to reform the deed.    For conveyances are not to be reformed and made to read in such manner as may best carry into effect the intentions of the parties as ascertained from parol testimony, when there is no satisfactory proof, that they did not use the language which they intended to use."

In the case of McAninch v. Laughlin, 13 Pa. St. 371, the facts were within the knowledge of both parties, and the mistake was in the judgment they formed of the legal effect of them, but the court held that such a mistake was not a ground of relief.

In the case of Oiler v. Gard, supra, this language is used:    "It is not proved that the language or import of the note was not well understood, or that either was different from what was intended by the parties when it was written and signed.    The testimony of Gard fails to show that there was anything omitted in the writings of the fifteenth of August and the nineteenth of October, 1857, which was, at the time of their execution, intended to be inserted.    Gard understood the language and import of the papers, but he did not understand their legal effect.    This was a *mistake of law,* unattended by such circumstances as would entitle him to relief in equity. A mistake or ignorance of the law forms no ground of relief from contracts fairly entered into, with full knowledge of the facts, under circumstances raising no presumption of fraud, imposition, or undue advantage taken."

In the case of Davis v. England, 141 Mass. 587, the note was in form, "I promise," etc., and was signed as follows, W.

H. England, president and treasurer of Chelsea Iron Foundry Company. The defendant offered evidence to show that the consideration of the note, which was for the sale of a bill of goods which was delivered to the company, and that at the time, and after the note was given it was understood, intended, and agreed by both parties that the note was the note of the company. The court admitted the evidence over objection thereto. In the opinion rendered, it was said: "The learned justice who presided in the Superior Court rightly ruled that the note sued on is the note of the defendant, and not of the Chelsea Iron Foundry Company. Tucker Manuf. Co. v. Fairbanks, 98 Mass. 101. But it was erroneous to admit oral testimony to show that, at the time the note was given and afterwards, it was understood and agreed by the parties that the note was the note of the Chelsea Iron Foundry Company."

In the case just cited, in legal effect, the note was the note of W. H. England, and not that of the company. In the case at bar the legal effect of the note in question was, as hereinbefore shown, the note of the guardian.

In the case of Conner v. Clark, 12 Cal. 171, the court said: "Story on Promissory Notes, section 63, says: 'As to trustees, guardians, executors, and administrators, and other persons, acting *en autre droit,* they are by law generally held personally liable on promissory notes, because they have no authority, to bind, *ex directo,* the persons for whom, or for whose benefit, or for whose estate they act; and, hence, to give any validity to the note, they must be deemed personally bound as makers. It is true that they may exempt themselves from personal responsibility, by using clear and explicit words to show that intention; but, in the absence of such words the law will hold them bound. Thus, if an executor or administrator should make or indorse a note in his own name, adding

thereto the words 'as executor' or 'as administrator,' he would be personally responsible thereon. If he means to limit his responsibility, he should confine his stipulation to pay out of the estate.' Story on Agency, 176; asserts the same doctrine. The question here is not, as the counsel for the appellant has ingeniously suggested, whether a principal can be bound on an unsealed contract, where the writing intimates and notifies, by general words, the fact of agency, and parol evidence explanatory of the fact intimated is given. But here there is no doubt that the person signing as trustee was bound; but he wishes to prove that he was bound only in a certain way, that is, to pay out of a particular fund. It is not pretended that any one else was bound by this contract. No authority is shown in Clark to bind the beneficiaries in this trust by this note. In form and legal effect the note binds him to pay this amount; but he wishes to add to this note another term, namely, that he was only to pay it out of a certain fund; and this, he wishes to prove, was a cotemporaneous parol agreement. But the rule is, that the written contract is considered the definitive agreement of the parties, and parol conversations and understandings are all merged in it. It is the only authentic evidence of the understanding of the parties."

As the terms of the note in question were such as the parties intended to use, and their legal effect was to bind the guardian personally, the parol evidence showing a different understanding was inadmissible, and the objection of the plaintiff thereto should have been sustained.

The order of the probate court being made without authority of the statute, is void, and does not therefore shield the guardian from personal liability. McCalley v. Wilburn, 77 Ala. 549; Whitesides v. Jennings, 19 Ala. 784, 788; Hudson v. Holmes, 23 Ala. 589; Beal v. Harmon, 38 Mo. 436-439; Woerner on Guardianship, 200, 219.

It is elementary that a judgment or order of a court made without authority is void, and confers no rights and affords no protection to persons acting in pursuance thereof.

In the case of McCalley v. Wilburn, supra, the court said: "If his petition to the probate court had contained all the requisite jurisdictional allegations, and the order of the court based on the petition had been otherwise regular, it is very clear that the obligation given by the administrator would have been binding on him in his representative capacity, and he would not have been in any wise personally liable. Such is the express declaration of the statute. But this is the case only where the proceedings of the court are valid, so as to confer upon the administrator the legal authority to bind the estate by the execution of 'such note, bond, or bill.' Code, 1876, sec. 2432. It is obvious that an administrator can not shield himself from personal liability, by refuge under an order which is absolutely void. The rule of law which governs his liability is analogous to that governing trustees and agents in general. Where he undertakes to bind the estate, and fails to do so for want of authority, he binds himself personally, and may be sued upon his contract individually. Whitesides v. Jennings, 19 Ala. 784. And in such cases, it avails him nothing, that he intended only to bind himself in his representative capacity."

It appears that McGurrin was made payee of the note only as an accommodation to the attorneys beneficially interested. How this could accommodate them, or what induced them to resort to this indirect method was not inquired into. It does appear, however, from the face of the note that two of the beneficiaries signed the same as guardians of their respective wards, whom, it is claimed, it was intended should be bound by the note so signed.

It also appears that McGurrin had no personal interest

in the matter whatever; that he took no part in the negotiations; that the note at its execution was delivered to the beneficiaries, and that previous to the time McGurrin purchased the same on December 5, 1893, it had not been in his possession. Nor does it appear that he was present at the execution of the note, or that he was advised that it was not intended to bind the guardian personally, by the note. The defendant stated in his testimony that he remembered distinctly that he, Critchlow and Varian were present at the execution of the note, and to the best of his recollection McGurrin was there also. On cross-examination, he said, "I am not certain about McGurrin being present when I executed the note and mortgage. I am certain as to the others."

McGurrin being placed on the witness stand, by the defendants, testified, in substance, that he bought the note from Mr. Varian for a valuable consideration; that neither at or prior to the time he purchased the same was anything said about his not looking to Hurd; that there was no understanding, expressed or implied, that he should not be liable on the note; that nothing was said about it at all; that at the time he saw he note and mortgage, and the manner in which it was signed, he took it for granted that when they signed their names in that way they had the authority; that he did not suppose Hurd was binding himself personally on the note, and understood that what he was getting was the note of John Blazzard, by Joseph H. Hurd, his guardian; that he took the note for what it was worth and expected to hold Hurd if he had no authority to make the note, and had no understanding by which Hurd was not to be liable, but supposed he had authority to sign the note.

It does not appear from the record that McGurrin had any knowledge that it was understood by the interested parties that the guardian was not to be personally bound.

Evidently McGurrin supposed that the legal effect of the note was to bind the ward and not the guardian, but would the fact that he was mistaken in this deprive him of the rights of an innocent holder for value, and prevent him from enforcing the note according to its legal effect? It would not; and this being so, the plaintiff, notwithstanding he became the owner of the note, for value, after its maturity, is not deprived of such right. As parol evidence is not admissible to defeat the legal effect of a written contract the terms of which the parties intended to use, if the beneficiaries of the note had brought suit to recover on the same, such evidence to defeat the legal effect of the same, would not have been admissible over their objection; it follows that such evidence would not be admissible, over objection, in a suit by any subsequent owner and holder of said note for value.

The attorneys have received their fee and the debt of the ward has been paid, and if the guardian were not personally liable on the note the holder of the same, for value, would have no remedy, for he can neither hold the ward or guardian on implied assumpsit, nor do we know of any other available remedy. The guardian, however, has a remedy. Under the provision of the statute he has the right to credit himself in his accounts, with any sum legitimately expended or advanced in the discharge of his duties, and to have the same satisfied out of the ward's estate.

It is alleged in the answer that the said James Blazzard, and Mariam Blazzard Steers, two of the makers of said note, by separate deeds conveyed to the plaintiff certain real estate, and that there was deducted from the consideration of said deeds a sum equal to one-half of the amount of said note, and which was retained by plaintiff, who in consideration of such retention agreed to indemnify and save harmless the said James Blazzard and Mariam Blazzard Steers against and

from all liability upon said note, and the mortgage given to secure the same.

The evidence shows that a portion of the consideration of said deeds was so retained, but the exact amount is not shown. Whenever the plaintiff became the owner of said note, whatever amounts were so deducted and retained should, as to him, be regarded and treated as payments on the note, and the guardian is only liable for the balance.

It further appears from the testimony of E. B. Critchlow, before quoted, that the guardian was appointed at the request of the attorneys to whom the fee was due, and that "as to the execution of the note he was acting in (their) interest entirely; it was for (their) accommodation."

In view of such action, and the other facts disclosed in the case, in connection with the lack of general authority of the guardian in the premises, the parties to the transaction, as against the holder of the note, who paid a valuable and good consideration for the same, should not have been allowed to say that they intended to bind the ward only.

It is ordered that the judgment be reversed, at respondent's costs, with directions to the lower court to grant a new trial. *Bartch, J.,* concurs.

MINER, C. J. (*dissenting*).—I do not concur in the opinion of my learned associate, Mr. Justice BASKIN. While it is true that ordinarily a guardian who makes a contract as such binds himself and not his ward, yet there are exceptions to the rule that are quite as well settled as the rule itself. The guardian is held responsible where he has bought or contracted for the benefit of his ward, and the law implies an agreement on his part to pay, or where there was a written contract entered into with apt words to bind him personally. But the promise under consideration was made in the name of

the principal, and as his contract, and not as the individual contract of Hurd.　The makers and the payee understood, executed, and accepted the note as the note of the principal, and did not understand that Hurd was to be individually and personally bound as guardian.　There are no apt words in the instrument that can be construed into a personal contract binding the guardian.　The rule of law · is well settled that an agent or trustee can not be held upon a contract he assumes to execute for another, unless there are apt words of personal obligation on the part of such agent or trustee written in the contract.　In the present case the note did not contain a personal promise of the guardian to pay.　It was not executed by Hurd, as guardian, but by John Blazzard himself, by Hurd as general guardian.　It was the note of John Blazzard, by his guardian, and not the note of the guardian.　The note fails to bind the ward because of want of authority on the part of the guardian to execute it, and it also fails to bind the guardian because it does not contain apt words making it a personal obligation, and because the payee, with knowledge of the facts, relied upon the power of the guardian to make a binding contract for his ward, and, therefore, the mistake is one of law.

While there is a conflict in the authorities on this subject, yet the general rule is as above stated.

As to the first proposition, Mechem on Agency, at section 550, says:　"Where the promise is made in the name of the principal and as his contract, the better opinion is that the agent can not be held liable upon it, but only for the deceit or breach of warranty, even in the case of a written contract, where the assumed relation of agency appears upon the face of it.　* * *　The rule sometimes asserted that whenever the agent fails to create a right of action against his principal upon the contract, he makes himself liable thereon, can not, therefore be sustained as a general rule.　The agent is only liable

on the contract in those cases in which he has used apt words to bind himself, or has expressly pledged his personal responsibility, or in which the credit was given to him personally." Hall v. Crandall, 29 Cal. 567; Lander v. Castro, 43 Cal. 497; Johnson v. Smith, 21 Conn. 627; Mechem on Agency, sec. 550.

In a note to the latter citation many cases are reported sustaining the principle announced.

As to the latter proposition above see 1 Am. and Eng. Ency. of Law (2 Ed.) 1127; Mitchell v. Jones, 84 Mo. 528; Cement Co. v. Jones, 8 Mo. App. 373; Humphrey v. Jones, 71 Mo. 62; Taylor v. Shelton, 50 Conn. 122; Ogden v. Raymond, 22 Conn. 379; Mechem on Agency, sec. 546.

I am also of the opinion that evidence was admissible to show the knowledge of the parties that the note was intended as the obligation of the principal, and not of the agent, and that it was given and accepted as such. There is some conflict of authority on this subject, but the weight thereof sustains the doctrine stated. The subject is fully discussed in Mechem on Agency, sec. 441, where the authorities are collected, and the author therein states that the weight of authority sustains the doctrine announced. See, also, 1 Randolph on Commercial Paper, sec. 147. The case of Metcalf v. Williams, 104 U. S. 93, and Mechanic's Bank v. Columbia Bank, 5 Wheat. 326, also sustain the same doctrine. See, also, Keene v. Davis, 21 N. J. L. 683, and second volume of Notes on U. S. Reports, page 34, and Mechem on Agency, 288.

In my opinion the judgment of the district court should be affirmed.